Louis KUJAWSKI, Plaintiff–Appellant,

v.

BOARD OF COMMISSIONERS OF BARTHOLOMEW COUNTY, INDIANA, and Bartholomew County Community Corrections Department, Defendants–Appellees.

No. 98–3221.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 20, 1999.

Decided July 16, 1999.

Michael R. Morow (argued), Stephenson, Daly, Morow & Kurnik, Indianapolis, IN, for Defendants–Appellees.

Before COFFEY, RIPPLE and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

Louis Kujawski brought this § 1983 action against the Board of Commissioners of Bartholomew County, the Bartholomew County Corrections Department and the State of Indiana. He alleged that the defendants had retaliated against him because he had exercised his First Amendment right to express his opinion. He also brought several supplemental state claims. The district court granted summary judgment and dismissed the federal claim against the Board of Commissioners ("the Board" or "the County"); it held that the County was not responsible, under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), for Mr. Kujawski's termination. The court then relinquished supplemental jurisdiction over the state law claims. Mr. Kujawski appeals only the dismissal of the federal claim against the County. For the reasons set forth in the following opinion, we reverse the judgment of the district court and remand for further proceedings.

## I

## BACKGROUND

### A. Facts

Mr. Kujawski was employed as a community corrections officer. On October 27, 1994, he attended a farewell party for his supervisor in the Community Corrections Office. At this celebration, while speaking to Judge Monroe of the Superior Court, Mr. Kujawski criticized the Department's practice of not confiscating weapons from home detainees. He expressed the view that this policy created a risk to community corrections officers. Mr. Kujawski criticized in particular a search performed under instructions from the Chief

Richard A. Waples (argued), Indianapolis, IN, for Plaintiff–Appellant.

Probation Officer, Victor Parker. The community corrections officers had found a firearm in a chest of drawers of a detainee but, pursuant to Officer Parker's instructions, did not remove the weapon from the drawer. During his conversation with Mr. Kujawski, Judge Monroe stated that he disagreed with this policy. The judge immediately dictated a new weapons confiscation policy. Officer Parker was present during this conversation; the judge asked "what idiot" was responsible for the failure to seize the weapon. Officer Parker was visibly angered by Judge Monroe's criticism. On December 2, 1994, Parker fired Mr. Kujawski. Mr. Kujawski alleges that his termination was motivated by the exercise of his First Amendment right to make statements regarding the weapons confiscation policy.

As a county employee, Mr. Kujawski had received a Bartholomew County Personnel Policy manual that set forth a grievance procedure. The final step in the grievance process was a hearing before the County Board of Commissioners. Mr. Kujawski wrote a grievance letter and delivered a copy to Officer Parker and to the judges of the courts in Bartholomew County, who had hired Parker. He also met with County Commissioner Larry Kleinhenz and gave him a copy of the grievance.

Kleinhenz sent Mr. Kujawski a letter stating that he had discussed the grievance with the Board's Personnel Policy Committee. In the letter, he promised Mr. Kujawski that the Committee would "investigate the matter further." R.41, Ex.C. However, the Commissioners never held a hearing regarding Mr. Kujawski's grievance. Instead, they sent the grievance to the county attorney, who forwarded it to Parker. Kleinhenz explained this action by stating that the grievance "was not a matter concerning an employee ordinarily supervised or reviewed by the Bartholomew County Commissioners." R.35, Ex.A at ¶ 11. All three of the Commissioners stated in their affidavits that they "never reviewed any personnel decisions of Victor Parker." R.35, Ex.A, ¶ 10, Ex.B, ¶ 10 & Ex.C, ¶ 10.

## B. The District Court's Decision

The district court dismissed the federal claim against the County on the ground that Mr. Kujawski had not established the existence of a municipal policy or custom that led to the alleged First Amendment violation. The court noted that, because there was no allegation that the County had an express policy or widespread practice that led to the alleged violation, Mr. Kujawski had to show that the injury was caused by someone with final decisionmaking authority. The court also held that under state law the Board has final policymaking authority over community corrections. Therefore, absent the Board's ratification of Parker's acts, or delegation of authority to Parker, Parker's decision to terminate Mr. Kujawski could not be attributed to the County under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Mr. Kujawski contended that the Board ratified Parker's decision, but the court rejected Mr. Kujawski's argument because it found no evidence in the record that the Board had ratified the alleged unconstitutional basis for the termination. The Board "merely refused to disturb the decision made by Parker." R.52 at 13.

The court also held that there was insufficient evidence of a delegation of policymaking authority in this case. Although Parker made all personnel decisions and the Board never reviewed such decisions, such a division of responsibility, the court held, did not establish a policy or custom of delegation. The court reasoned that there was no evidence that the Board ever had an opportunity, other than in Mr. Kujawski's case, to review Parker's decisions. And even if other opportunities existed, the court could not "see how the Commissioners' reluctance to review Parker's personnel decisions can be interpreted as a delegation of final policymaking authority." R.76 at 8. The court noted that this court's

precedent establishes that the mere decision to allow an official discretion to make certain decisions is insufficient to give rise to municipal liability. *See id.* (citing *Eversole v. Steele*, 59 F.3d 710, 715 (7th Cir. 1995); *Auriemma v. Rice*, 957 F.2d 397, 401 (7th Cir.1992)).

## II

## DISCUSSION

A municipality is not liable under § 1983 unless the deprivation of constitutional rights is caused by a municipal policy or custom. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Our case law establishes that a plaintiff may demonstrate the existence of municipal policy or custom in one of three ways: proof of an express policy causing the loss, a widespread practice constituting custom or usage that caused the loss, or causation of the loss by a person with final policymaking authority. *See McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir.1995). A person's status as a final policymaker under § 1983 is a question of state or local law. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Final policymaking authority may be granted directly by statute or delegated or ratified by an official having policymaking authority. *See id.* Customary practices having the force of law may be considered as proof of delegation:

> Reviewing the relevant legal materials, including state and local positive law, *as well as* " *'custom or usage' having the force of law,* " the trial judge must identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor

1. We need not address the ratification issue because we hold that there is an issue of fact regarding whether there was a delegation of authority to Officer Parker.

2. The County submits that there is no proof that, except for Mr. Kujawski's case, the Board ever had an opportunity to review Par-

concerning the action alleged to have caused the particular constitutional or statutory violation at issue.

*Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 n. 1, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)) (emphasis added).

Mr. Kujawski submits that the County Board either delegated final policymaking authority to Parker or ratified Parker's decision to terminate Mr. Kujawski.[1] To support this contention, he invites our attention to the following evidence. Michael Richardson, a former community corrections officer in the County, stated in his affidavit that, as Chief Probation Officer, Parker was "in charge" of the community corrections department. Richardson further stated that Parker supervised the community corrections employees and that the director of community corrections reported to him. Mr. Kujawski stated in his affidavit that Parker held department meetings and established department policies. He specifically noted that Officer Parker promulgated the policy that all officers would be required to obtain state certification in order to keep their jobs. He further noted that Officer Parker had inaugurated the policy concerning the confiscation of firearms by detainees under house arrest that had led to his termination. Moreover, Mr. Kujawski notes that every commissioner stated by affidavit that the Board "never reviewed any personnel decisions of Victor Parker." One of the commissioners, Kleinhenz, stated that Mr. Kujawski was not "an employee ordinarily supervised or reviewed by the Bartholomew County Commissioners."[2] Commissioner Kleinhenz further

ker's decisions. Kleinhenz's use of the word "ordinarily" suggests that the County's argument is invalid. Moreover, it is reasonable to infer from the other commissioners' statements that there was a custom of delegating authority to Parker, as will be discussed more fully below.

notes that the decision not to review Mr. Kujawski's discharge was made on the advice of the County attorney. Mr. Kujawski argues that this evidence indicates that the commissioners made a de facto complete delegation of their authority over personnel decisions relating to community corrections officers.

## A.

■ In undertaking an evaluation of Mr. Kujawski's submission, we pause first to address the contention that Officer Parker is a representative of the State, and not the County, and that the County therefore cannot be held liable for Parker's actions.

The appropriate methodology for resolving this question was addressed recently for the Supreme Court of the United States by the Chief Justice. Relying on the Court's earlier cases involving municipal liability, the Chief Justice wrote that our task is to determine whether the official in question was a final policymaker for the local government "in a particular area, or on a particular issue." *McMillian v. Monroe County*, 520 U.S. 781, 785, 117 S.Ct. 1734, 1737, 138 L.Ed.2d 1 (1997). We therefore must focus on Parker's role in community corrections officer personnel decisions.

At the outset, we note that, on the basis of the legal authority and evidence submitted by the parties, probation officers such as Officer Parker are answerable to the state courts on professional matters concerning the supervision of those placed under their charge by the courts. Indiana Code § 11–13–1–1(c) states that "probation officers shall serve at the pleasure of the appointing court and are directly responsible to and subject to the orders of the court." The Court of Appeals of Indiana, adjudicating a civil rights action brought by a former foster child who alleged that probation officers failed to protect him, wrote that "[t]he duties of probation officers are prescribed by statute and consist solely of assisting the court and performing such tasks as the court may direct." *J.A.W. v. Indiana*, 650 N.E.2d 1142, 1150 (Ind.Ct.App.1995). Therefore, when Officer Parker promulgated a policy about the confiscation of weapons from those detained at home, he was acting on authority delegated by the court which is part of the state government.

By contrast, here, we must focus on Officer Parker's decisions relating to the employment of community corrections officers. Because the County has personnel authority over community corrections officers, we believe that the district court concluded correctly that, when Officer Parker made employment decisions concerning these employees, he acted as a decisionmaker for the County. Under state law, "employees of a community corrections program are county employees." Ind.Code § 11–12–2–3.5(b).[3] There is, moreover, evidence that the County acknowledged its responsibility with respect to such employment policies when it provided to Mr. Kujawski, upon his employment, a County Personnel Policy Manual. That manual contains a grievance proce-

---

**3.** The entire section of the Indiana Code reads as follows:

(a) The director, if any, of the community corrections program shall be appointed by the community corrections advisory board, subject to the approval of the county executive or, in a county having a consolidated city, by the city-county council. A director may be removed for cause by a majority vote of the community corrections advisory board, subject to the approval of the county executive or, in a county having a consolidated city, of the city-county council.

(b) The community corrections advisory board may establish personnel policies, procedures, and salary classification schedules for its employees. Employees of a community corrections program are county employees. The policies, procedures, and schedules established under this subsection may not be inconsistent with those established for other county employees.
Ind.Code § 11–12–2–3.5.

dure; the final step of that procedure is a hearing before the County Board. If the County Board delegated its authority with respect to personnel to Officer Parker, then he is acting as an agent of the County, not the State.

### B.

■■ We therefore turn to the County's submission that any personnel responsibilities it did delegate to Officer Parker are insufficient to amount to a delegation of policymaking authority. In this regard, the County relies on the well-established principle that the mere unreviewed discretion to make hiring and firing decisions does not amount to policymaking authority. There must be a delegation of authority to set policy for hiring and firing, not a delegation of only the final authority to hire and fire. *See Venters v. City of Delphi,* 123 F.3d 956, 966 (7th Cir.1997); *Radic v. Chicago Transit Auth.,* 73 F.3d 159, 161 (7th Cir.1996); *Auriemma v. Rice,* 957 F.2d 397, 401 (7th Cir.1992).

■ We confirm the validity of this principle. Nevertheless, reviewing this record in the context of a summary judgment motion, we believe that there re-mains a genuine issue of fact as to whether the Board had, as a matter of custom, delegated final policymaking authority to Parker with respect to community corrections employees.[4] Mr. Kujawski has provided evidence that the Board never reviewed Parker's personnel decisions, that Parker was "in charge" of the department, that Parker called community corrections meetings and set employment policies for the community corrections department. The affidavits of the County Commissioners also are susceptible to the interpretation that they did not review Mr. Kujawski's grievance because, as a matter of policy, the commissioners did not intervene in employment decisions involving employees of the community corrections department. *See Zook v. Brown,* 865 F.2d 887, 895 (7th Cir.1989); *see also Ware v. Jackson County,* 150 F.3d 873, 886 (8th Cir. 1998); *Randle v. City of Aurora,* 69 F.3d 441, 449 (10th Cir.1995); *Mandel v. Doe,* 888 F.2d 783, 794 (11th Cir.1989). Our colleagues in the Eighth Circuit stated the appropriate inquiry succinctly: "[T]he key question ... is whether the County delegated ... its power to establish final employment policy with respect to the discipline of officers. If so, then [the official's]

---

4. The defendants note that Indiana law requires that a delegation of a county board's duties be express and made to elected officers: "All powers and duties of the county that are executive or administrative in nature shall be exercised or performed by its executive, except to the extent that these powers and duties are *expressly* assigned to other elected officers." Ind.Code § 36–2–3.5–4 (emphasis added). In the defendant's view, because the County Board did not expressly delegate its personnel authority to an elected officer, there was no delegation for purposes of *Monell.*

In *City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), Justice O'Connor, writing for a plurality of the Court, recognized that long standing customs, not authorized by written law or express municipal policy, can become so permanent and well settled as to constitute a custom or usage with the force of law. It is necessary, reasoned the Justice, to recognize such custom or policy in order to prevent "egregious attempts by local governments to insu-late themselves from liability for unconstitutional policies." *Id.* at 127, 108 S.Ct. 915. In *Praprotnik,* Justice O'Connor was describing customs and policies that constitute the underlying constitutional violation, not an issue of delegation. Nevertheless, we think that her analysis is equally applicable to the issue of delegation. The Supreme Court has made it clear that, in examining delegation issues, we must take into account both state positive law and state custom that has the force of law. *See Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *Praprotnik,* 485 U.S. at 124 n. 1, 108 S.Ct. 915. A municipal body ought not be able to avoid its constitutional responsibilities by delegating, in violation of state law, its responsibilities. As Judge Easterbrook wrote in *Auriemma v. Rice,* 957 F.2d 397 (7th Cir.1992), "[e]ven executive action in the teeth of municipal law could be called policy.... A practice undertaken by the executive power and suffered by the legislative power may be said to reflect a custom with the force of legislation." *Id.* at 399.

decisions would represent county policy and could give rise to municipal liability." *Ware*, 150 F.3d at 876 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 n. 12, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)) (internal quotation marks and citation omitted). As the record comes to us, the evidence in this case permits the reasonable inference that the Commissioners delegated to Officer Parker the authority to make employment policy decisions with respect to community corrections employees. We therefore must return this case to the district court for further proceedings.

### Conclusion

For the foregoing reasons, the judgment of the district court is reversed and remanded.[5]

REVERSED and REMANDED.

---

**5.** The County submits, as an alternative basis for affirmance, that Mr. Kujawski's comments were not made with respect to a matter of public concern. *See Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). This matter was not addressed by the district court, and we believe that the matter first ought to be addressed, if necessary, in that court.

The County also contends that summary judgment should be granted because Mr. Kujawski was not fired in retaliation for his comments. Although the district court may not reach the issue, on the record before us, there also appears to be an issue of fact on this question.