# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 04-1492

DAVID KILLINGER,

Plaintiff-Appellant,

v.

DON JOHNSON, Individually, and as Mayor
and Liquor Commissioner, and VILLAGE OF
PORT BYRON, ILLINOIS,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Central District of Illinois.
No. 02 C 4044—**John A. Gorman**, _Magistrate Judge._

_____

ARGUED SEPTEMBER 15, 2004—DECIDED NOVEMBER 24, 2004

_____

Before FLAUM, _Chief Judge,_ and COFFEY and KANNE,
_Circuit Judges._

FLAUM, _Chief Judge._ Plaintiff-appellant David Killinger
owns a bar and restaurant in the Village of Port Byron,
Illinois. Because plaintiff's establishment allegedly had sold
beer to an underage man, the mayor of Port Byron tempo-
rarily closed the business, suspended Killinger's license,
and imposed a fine. Killinger subsequently filed this suit in
federal court under 42 U.S.C. § 1983 against the mayor and

the village, alleging violations of the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution. The district court granted summary judgment in favor of both defendants. We hold that the mayor enjoys judicial immunity, and the alleged injuries were not caused by a Port Byron policy. Accordingly, we affirm.

## I. Background

Every August, Port Byron holds a two-day celebration known as "Tug Fest." The celebration culminates in a tug-of-war across the Mississippi River, pitting the residents of Port Byron against their rivals in Le Claire, Iowa. Tug Fest attracts a fair number of tourists, swelling the population of both towns. Port Byron relaxes its liquor laws during the festival, allowing adults age 21 and over to drink outside. To prevent underage drinking, local police and liquor licensees hand out wristbands to adults of legal age who present valid photo identification.

David Killinger and his wife own an establishment in Port Byron named G's Riverfront Café ("G's"). G's is a fine dining restaurant with an adjacent bar, located near the Tug Fest activities. During the festival, G's converts its operations to accommodate the crowds, selling mainly beer, wine, liquor, and some fast food.

On August 10, 2001, the first night of Tug Fest that year, Port Byron police officers patrolling the festivities observed a young-looking man who was not wearing a wristband drinking beer from a 16-ounce can. After being questioned by the officers, the man admitted that he was underage, and that he had purchased the beer from G's without being asked for identification. The officers knew from experience that G's was the only nearby establishment selling beer in 16-ounce cans.

The officers relayed this information to Chief of Police Steven Rathburn. Chief Rathburn sent several underage people to attempt to buy beer from G's, but these attempted "stings" were unsuccessful. Chief Rathburn then conferred with Port Byron Mayor Donald Johnson. As mayor, Johnson also acts as the local liquor control commissioner, charged with the administration of Illinois's Liquor Control Act of 1934 ("the Liquor Act"). *See* 235 Ill. Comp. Stat. 5/4-2. Mayor Johnson decided, with the chief's concurrence, that he should order G's closed for the remainder of the evening. The mayor did not issue a written order explaining the reasons for this decision.

Around 10:00 P.M., Chief Rathburn went to G's and spoke with Killinger. The chief explained that police had arrested an underage man who claimed to have purchased a beer at G's without being asked for identification. Despite Killinger's denial that his business had violated the law, Chief Rathburn directed plaintiff to close both the bar and restaurant areas of G's. The business otherwise would have remained open until 2:00 A.M. G's was allowed to re-open the next day.

On August 30, 2001, Mayor Johnson, acting as the local liquor control commissioner, held a public hearing on whether G's had served an alcoholic beverage to a minor. Killinger was represented by counsel, but it is unclear whether he was allowed to cross-examine Port Byron's witnesses. Mayor Johnson found that G's had violated the Act, suspended G's liquor license for three days, and imposed a $500 fine. On appeal of that order to the State Liquor Commission, Killinger was represented by counsel, offered witnesses, and cross-examined Port Byron's witnesses. The State Liquor Commission affirmed the suspension and fine. Killinger appealed the State Liquor Commission's decision to the Rock Island County Circuit Court. The record is unclear as to the status of that appeal.

On May 24, 2002, Killinger filed the instant action under 42 U.S.C. § 1983. The complaint alleged that Mayor Johnson violated plaintiff's procedural due process rights by failing to hold a hearing prior to the summary closing on August 10, 2001, and by ignoring procedures required by Illinois law. Killinger also claimed that the mayor violated his equal protection rights by singling out G's for scrutiny. Plaintiff sought to impose liability on both Johnson and Port Byron for the mayor's actions.

The district court (per Magistrate Judge John Gorman, presiding by consent) granted summary judgment in favor of the defendants on all counts. It ruled that Mayor Johnson enjoyed judicial immunity for his acts as the local liquor control commissioner. The court also held that Killinger's injury, if any, was not caused by a policy of Port Byron. It concluded, finally, that plaintiff had been afforded adequate process, and failed to establish an equal protection claim as a matter of law.

## II.  Analysis

Killinger appeals the district court's grant of summary judgment in favor of defendants as to his due process claims.[1] Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We review the facts in the light most favorable to the nonmovant, and draw all inferences in favor of that party. *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003). A district court's grant of summary

---

[1]  Plaintiff does not appeal the district court's ruling regarding his equal protection claims.

judgment is reviewed de novo. *Sullivan v. Ramirez*, 360 F.3d 692, 696 (7th Cir. 2004).

### A.  Claim Against Mayor Johnson

The Liquor Act authorizes Mayor Johnson, as local liquor control commissioner, to impose fines or revoke or suspend licenses for violations of the Act. *See* 235 Ill. Comp. Stat. 5/7-5. Selling alcohol to a person under the age of 21 constitutes a violation of the Act. 5/6-16(a)(i). The Liquor Act establishes the procedures that must be followed before these sanctions may be imposed: "[N]o such license shall be so revoked or suspended and no licensee shall be fined except after a public hearing by the local liquor control commissioner with a 3 day written notice to the licensee affording the licensee an opportunity to appear and defend." 5/7-5. The Liquor Act also permits the temporary closing of a business without a prior hearing in certain limited circumstances:

> If the local liquor control commissioner has reason to believe that any continued operation of a particular licensed premises will immediately threaten the welfare of the community he may, upon the issuance of a written order stating the reason for such conclusion and without notice or hearing order the licensed premises closed for not more than 7 days, giving the licensee an opportunity to be heard during that period, except that if such licensee shall also be engaged in the conduct of another business or businesses on the licensed premises such order shall not be applicable to such other business or businesses.

*Id.*

Killinger asserts that the mayor violated these procedures by summarily closing G's without issuing a written order,

explaining his reasons, or holding a hearing while the bar was ordered closed (between 10:00 P.M. on August 10th and 2:00 A.M. on August 11th). The order summarily closing G's was also overbroad, according to plaintiff, because it applied to both the bar and restaurant areas of G's. Although the mayor later held a hearing to address the propriety of imposing a fine and suspension, Killinger contends that he was never afforded an opportunity to challenge the summary closing itself.

Plaintiff argues that, by violating Illinois law, the mayor also violated his federal due process rights. Killinger also asserts that the Due Process Clause requires the authorities to hold a hearing before temporarily closing his business, *see, e.g., Bell v. Burson*, 402 U.S. 535, 542 (1971), even though the Liquor Act does not. We do not reach the merits of Killinger's due process claim against Johnson, however, because we agree with the district court that the mayor is protected by judicial immunity.

Absolute judicial immunity shields judicial and quasi-judicial actors from liability for civil damages arising out of the performance of their judicial functions. *Butz v. Economou*, 438 U.S. 478, 512-13 (1978). In determining whether an official enjoys judicial immunity, we examine "the nature of the responsibilities of the official in question." *Tobin for Governor v. Ill. State Bd.*, 268 F.3d 517, 521 (7th Cir. 2001). "[I]mmunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." *Forrester v. White*, 484 U.S. 219, 227 (1988). Following this functional approach, we have held that an Illinois local liquor control commissioner enjoys absolute immunity when deciding whether to renew or revoke a liquor license. *Reed v. Village of Shorewood*, 704 F.2d 943, 951 (7th Cir. 1983). Our conclusion in *Reed* was based upon the authority conferred and the limits imposed upon a commissioner by Illinois law:

> He may not revoke without finding that the licensee has violated the law; he may make that finding only after notice and hearing; and he "shall reduce all evidence to writing and shall maintain an official record of the proceedings." In addition, revocation is . . . appealable to the state Liquor Control Commission.

*Id.* (quoting Ill. Rev. Stat. ch. 43, ¶ 153 (1983)).[2]

*Reed* applies with equal force to a local liquor control commissioner's decision to suspend a license, impose a fine, or summarily close a licensee's business. A suspension or fine may be imposed based on the same findings and subject to the same procedures as were at issue in *Reed. See* 235 Ill. Comp. Stat. 5/7-5. Moreover, although the findings and procedures relevant to a summary closing differ somewhat from those highlighted in *Reed*, we find a commissioner's action in this regard analogous to the issuance of a temporary restraining order, *see* Fed. R. Civ. P. 65(b), clearly a judicial function. *Beard v. Udall*, 648 F.2d 1264, 1269 (9th Cir. 1981), *overruled on other grounds by Ashelman v. Pope*, 793 F.2d 1072 (9th Cir. 1986); *cf. Dykes v. Hosemann*, 776 F.2d 942, 948 n.19 (11th Cir. 1985) (holding that the issuance of a temporary order of child custody constitutes a judicial function). Mayor Johnson was therefore performing a judicial function when he temporarily closed G's, fined Killinger, and suspended his license.

Killinger does not seriously dispute that such actions would normally qualify as judicial functions. He argues, however, that by ignoring the procedures mandated by the Liquor Act, Mayor Johnson acted outside of his jurisdiction and was thereby stripped of the immunity typically afforded quasi-judicial actors. Killinger asserts that judicial immunity does not apply to "actions, though judicial in nature,

---

[2] The 1983 version of Paragraph 153 of Chapter 43 of the Illinois Revised Statutes is a prior codification of the Liquor Act.

taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 12 (1991).

Although this is a correct statement of the law, it does not support plaintiff's case. A quasi-judicial actor enjoys immunity "for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." *Stump v. Sparkman*, 435 U.S. 349, 359 (1978); *Brokaw v. Mercer County*, 235 F.3d 1000, 1015 (7th Cir. 2000); *John v. Barron*, 897 F.2d 1387, 1391 (7th Cir. 1990). Stated otherwise, an official does not act "in the complete absence of all jurisdiction," *Waco*, 502 U.S. at 12, merely because he violates a procedural rule. Mere procedural violations establish, at worst, that the official acted "in excess of jurisdiction." The Supreme Court has illustrated the distinction as follows:

> [I]f a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

*Stump*, 435 U.S. at 357 n.7 (citing *Bradley v. Fisher*, 80 U.S. 335, 352 (1871)).

As discussed above, the Liquor Act vests the mayor with the authority to issue fines, suspend licenses, and summarily close licensees' businesses for short periods. The mayor did not act in the clear absence of all jurisdiction by exercising this authority, even if he failed to comply with the procedures mandated by the Act. Because Johnson enjoys absolute immunity from liability arising out of these actions, we need not reach the merits of plaintiff's claim against the mayor in his individual capacity.

**B. Claim Against Port Byron**

Although the mayor is entitled to judicial immunity, we must independently analyze plaintiff's claim against Port Byron. This is so because a municipality may not assert the judicial immunity enjoyed by its official. *Reed*, 704 F.2d at 953; *Devito v. Chi. Park Dist.*, 83 F.3d 878, 881 (7th Cir. 1996) ("The only immunities available in an official capacity suit are those that may be asserted by the governmental entity itself (*e.g.*, Eleventh Amendment immunity or sovereign immunity).").

Port Byron may be liable for the mayor's actions under § 1983 only if a municipal policy caused the constitutional violation. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978). A plaintiff may demonstrate the existence of an official policy in one of three ways: "proof of an express policy causing the loss, a widespread practice constituting custom or usage that caused the loss, or causation of the loss by a person with final policymaking authority." *Kujawski v. Bd. of Comm'rs*, 183 F.3d 734, 737 (7th Cir. 1999). Killinger does not contend that an express policy or widespread custom caused his injury. He argues only that Chief Rathburn held final policymaking authority, and that the chief ratified Mayor Johnson's decision to close G's. Killinger has failed to establish, however, that either Chief Rathburn or Mayor Johnson held final policymaking authority with respect to the challenged actions.

"In order to have final policymaking authority, an official must possess '[r]esponsibility for making law or setting policy,' that is, 'authority to adopt rules for the conduct of government.'" *Rasche v. Village of Beecher*, 336 F.3d 588, 599 (7th Cir. 2003) (quoting *Auriemma v. Rice*, 957 F.2d 397, 401 (7th Cir. 1992)). The mere authority to implement pre-existing rules is not the authority to set policy. *Id.* at 601; *Auriemma*, 957 F.2d at 401; *Eversole v. Steele*, 59 F.3d 710, 717 (7th Cir. 1995). "A person's status as a final

policymaker under § 1983 is a question of state or local law." *Kujawski*, 183 F.3d at 737. Courts identify those officials with final policymaking authority by "[r]eviewing the relevant legal materials, including state and local positive law, as well as 'custom or usage having the force of law.'" *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (quoting *City of St. Louis v. Praprotnick*, 485 U.S. 112, 124 n.1 (1988)) (internal quotations omitted). A municipality may also be liable for the actions of an employee who lacks final policymaking authority if that employee's actions were "ratified" by the municipality. *Baskin v. City of Des Plaines*, 138 F.3d 701, 705 (7th Cir. 1998). "[A] plaintiff seeking to establish a § 1983 claim against a municipality based on a 'ratification' theory must allege that a municipal official with final policymaking authority approved the subordinate's decision and the basis for it." *Id.*

Plaintiff's municipal liability theory fails because he has not identified any state or local positive law, or custom having the force of law, that grants either the chief or the mayor authority to adopt rules that are relevant to this case. *See Kujawski*, 183 F.3d at 738 ("our task is to determine whether the official in question was a final policymaker for the local government 'in a particular area, or on a particular issue'") (quoting *McMillian v. Monroe County*, 520 U.S. 781, 785 (1997)). The only arguable "policy" instituted by the chief was his decision to require that adults of drinking age wear wristbands during Tug Fest. We fail to see how the use of wristbands to police underage drinking could cause a constitutional violation. Rather, the thrust of plaintiff's claim is that the mayor violated his due process rights by failing to observe the procedures mandated by the Liquor Act. The very nature of this allegation, however, shows that plaintiff's claim lacks merit. The Illinois General Assembly, not the mayor, established the procedures applicable to temporary closings, suspensions, and fines under the Act. If the mayor violated these procedures,

he was acting contrary to—not setting—the policy of the State. Because the mayor does not hold final policymaking authority to establish procedural rules, Port Byron is not liable for his actions.

### III.  Conclusion

We hold that Mayor Johnson is protected by absolute judicial immunity. Moreover, the plaintiff has failed to establish that a policy of Port Byron caused the alleged constitutional violation. Accordingly, we AFFIRM the district court's grant of summary judgment in favor of both defendants.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*