**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois  60604**

Argued September 27, 2004
Decided April 5, 2005

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 03-4301

| | |
|---|---|
| GLENN R. NICHOLS,<br>    *Plaintiff-Appellant*,<br>  v. | Appeal from the United States District Court for the Northern District of Indiana, Hammond Division. |
| TOWN OF CEDAR LAKE, CEDAR LAKE POLICE DEPARTMENT, and CARL BRITTINGHAM,<br>    *Defendants-Appellees*. | No.  02 C 71<br><br>Philip P. Simon, *Judge*. |

**O R D E R**

Appellant Glenn Nichols sued the Town of Cedar Lake, Indiana, the Cedar Lake Police Department, and Officer Carl Brittingham alleging a violation of Fourth Amendment rights pursuant to 42 U.S.C. § 1983, and under Indiana law for false arrest and use of excessive force.  The district court granted the defendants' motion for summary judgment on all claims.  We affirm, finding that Brittingham had probable case to arrest Nichols for both public intoxication and disorderly conduct, and that there was no evidence in the record to establish that Officer Brittingham used excessive force against Nichols.

## I.    BACKGROUND

On August 24, 2001, at approximately 6:00 p.m., appellant Glenn Nichols

went to the Three Stooges Bar in Cedar Lake, Indiana to meet a friend, Rick Warczynski, for drinks.   Nichols stayed at the Three Stooges bar with Warczynski until approximately 10:00 p.m.  Nichols admits that he drank at least five or six beers during that time at the Three Stooges Bar.  (Nichols Dep. at 69.)  Nichols then walked home from the bar and entered his house on Lake Shore Drive.  Once inside, Nichols almost immediately left again, and headed back outside to Warczynski's house.

Nichols claims that once outside, when he approached the end of his driveway, he saw a marked Cedar Lake police car.  (Nichols Dep. at 82-3.)  Once he saw the squad car, Nichols turned around and headed back toward the house.  Nichols alleges that he heard the officer, later identified as Officer Brittingham, say "hey."  The next thing Nichols recalled was "down on the ground." (Id.)  Nichols does not recall how he fell.  Specifically, Nichols does not recall if he was ever pushed or even touched by Brittingham.  (Id. at 87-88.)

Brittingham testified that he was on patrol at approximately 10:30 p.m. on August 24, 2001 when he observed Nichols staggering on and off Lake Shore Drive. (Brittingham Dep. at 22.)  Nichols allegedly ran in front of Brittingham's squad car towards a grassy area behind a house on the south side of Lake Shore Drive.  (Id. at 23.)  Brittingham found this behavior suspicious and he turned his spotlight on Nichols and followed him.  Brittingham lost sight of Nichols when he went behind the house, but then found him laying face down in a gravel driveway on Lake Shore Drive.  (Id. at 24.)  Brittingham testified that "[i]t was obvious to me that he had fallen, his ball cap was lying in the direction that he was running, several feet away from him." (Id.)  Brittingham assumes that Nichols fell over a 4-foot retaining wall that was under construction just off of the gravel driveway, although he did not actually see him fall.  (Id. at 26-28.)

Upon reaching Nichols, Brittingham saw immediately that Nichols's head was bleeding.  Brittingham called for an ambulance, told Nichols to stay where he was, and asked Nichols for identification.  Nichols was mumbling, and Brittingham could smell a strong odor of alcohol coming from him.  Nichols was unable to tell Brittingham who he was.  (Id.  at 32.)  Nichols, has no recollection of these events. (See generally Nichols Dep. at 88-94.)

Shortly thereafter, the ambulance arrived.  Two emergency medical technicians ("EMTs") began to treat Nichols.  (Id. at 33).  One EMT on the scene, Dale Holsti, observed that Nichols had alcohol on his breath and that Nichols admitted to drinking, but would not specify how much he had to drink.  (Affidavit of Holsti ¶ 7.)  Holsti claims that Nichols became very aggravated and combative towards him and the other EMT, and that Nichols grabbed EMT Holsti and tried to pull him to the ground.  (Id.)  EMT Holsti's Patient Report specifies that Nichols's

injury was caused by an "accidental fall." (Affidavit of Holsti at Ex. A.) Nichols was taken to the hospital for treatment.

Based on his own observations and as a result of Nichols's actions towards EMT Holsti, Brittingham placed Nichols under arrest for disorderly conduct and public intoxication. Brittingham handcuffed Nichols's hands in front, for safety, but Nichols does not recall ever being handcuffed. (Nichols Dep. at 93.) The charges against Nichols have not yet been resolved.

## II.    ANALYSIS

Drawing all reasonable inferences from the record in the light most favorable to Nichols, the non-moving party, we find that the district court correctly granted summary judgment in favor of the defendants.

We review the  district court's grant of summary judgment *de novo*. *Killinger v. Johnson*, 389 F.3d 765, 769 (7th Cir. 2004). To succeed on a false arrest claim, Nichols must prove that Brittingham arrested him without probable cause. *Booker v. Ward*, 94 F.3d 1052, 1057 (7th Cir. 1996). "Probable cause is a 'commonsense determination, measured under a reasonableness standard.'" *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 2000) (quoting *Tangwall v. Stuckey*, 135 F.3d 510, 519 (7th Cir. 1998)). A police officer has probable cause to arrest if the totality of the facts and circumstances known to a reasonable arresting officer would support the belief that the suspect has committed or is committing a crime. *Driebel v. City of Milwaukee*, 298 F.3d 622, 643 (7th Cir. 2002) (citing *Marshall ex rel. Gossens v. Teske*, 284 F.3d 765, 770 (7th Cir. 2002); *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000)). "The court must consider the facts as they would have reasonably appeared to the arresting officer 'seeing what he saw, hearing what he heard' at the time of the incident." *Id.* (quoting *Richardson v. Bonds*, 860 F.2d 1427, 1431 (7th Cir. 1988)).

It is clear from the facts of this case that Brittingham had probable case to arrest Nichols for public intoxication. Public intoxication under Indiana law consists of (1) being in a public place, and (2) being in a state of intoxication, Ind. Code § 7.1-5-1-3, and it is undisputed that Brittingham (1) observed Nichols staggering on and off Lake Shore Drive, a public roadway; (2) found Nichols unconscious on the ground on a gravel driveway that is not a part of Nichols' property;  and (3) smelled alcohol on Nichols. Additionally, it is undisputed that Nichols was unable to state his name or address after he was asked to do so by Brittingham. Taking the facts and the circumstances as they must have reasonably appeared to Officer Brittingham at the time of the incident, Nichols appeared, and probably was in fact intoxicated. *See, e.g., Hirsch v. Burke*, 40 F.3d 900, 903-4 (7th Cir. 1994) (holding probable cause existed for public intoxication where an

individual was observed in a public place having trouble balancing, appeared incoherent, smelled of alcohol, had bloodshot eyes, and was unable to state his name or address).

In addition, Brittingham had probable cause to arrest Nichols for disorderly conduct. Under Indiana law, "a person engages in disorderly conduct when they [*sic*] recklessly, knowingly, or intentionally engage in fighting or tumultuous conduct, or makes unreasonable noise and continues to do so after being asked to stop." *Earles v. Perkins*, 788 N.E. 2d 1266, 1265 (Ind. Ct. App. 2003). Moreover, conduct which is likely to injure persons is sufficient to support a conviction for disorderly conduct. *Gebhard v. State*, 484 N.E. 2d 45, 48-49 (Ind. Ct. App. 2003).

The facts in this case establish that Brittingham had probable cause to arrest Nichols for disorderly conduct as Nichols was argumentative and combative on the night in question. According to Brittingham, Nichols was "yelling and cussing and being vulgar and disorderly" when the medical technicians were attempting to treat him. Officer Brittingham advised Nichols several times that he was going to be arrested if he kept behaving in this manner, but Nichols continued and ultimately became aggressive towards the emergency medical technicians while they were attempting to load him onto the gurney.

Nichols also argues that the district court erred in dismissing his excessive force claim. We disagree. There is no evidence in the record to establish that Officer Brittingham used excessive force against Nichols. A police officer's use of force is unconstitutional if, "judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Lester v. City of Chicago*, 830 F.2d 706, 713 (7th Cir. 1987). As applied to this case, there is nothing in the record to suggest that Officer Brittingham used greater force than was necessary to place Nichols under arrest. Nichols testified that he has no recollection of falling, being placed under arrest, or being handcuffed; therefore, Nichols cannot carry his evidentiary burden and establish that Brittingham used more force against him than was reasonably necessary. Nichols's speculation as to the events that occurred that night are insufficient to withstand summary judgment.

For all the reasons stated above, we AFFIRM the judgment of the district court.