In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 01-2884

ESTATE OF THETIS M. SIMS, by and through its
personal representative, Melissa K. Sims,
WILLIAM C. SIMS, surviving spouse and next of kin,
and MELISSA K. SIMS, individually,

*Plaintiffs-Appellants,*

*v.*

COUNTY OF BUREAU, as a necessary party in interest,
GREG JOHNSON, JOHN E. THOMPSON, in his official
capacity as Sheriff of the County of Bureau and
BUREAU COUNTY SHERIFF'S DEPARTMENT,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Central District of Illinois.
No. 00 C 1065—**Joe Billy McDade**, *Judge.*

_____

ARGUED FEBRUARY 26, 2003—DECIDED OCTOBER 19, 2007[1]

_____


Before EASTERBROOK, *Chief Judge*, and FLAUM and
KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* In 1999 Thetis M. Sims suffered
a fatal heart attack in her home in Tiskilwa, Illinois. The

_____

[1] The decision in this case was withheld pending lengthy
settlement proceedings in the Illinois State Courts.

only person present at the time was Bureau County Sheriff Greg Johnson, whose alleged campaign fraud was the subject of a story Ms. Sims was investigating for the local newspaper. Her estate, her husband, and her daughter brought a federal civil rights suit against Johnson in his individual and official capacities,[2] Bureau County, and the Bureau County Sheriff's Department, alleging that Johnson's actions led to Sims's death. The district court granted the defendants' motions to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), and the plaintiffs appeal. Following oral argument in the appeal, the plaintiffs informed us that they had settled their claims against Johnson, but that the remaining defendants were challenging the settlement agreement in Illinois state court. We suspended our proceedings until the Illinois courts could resolve the dispute. In accordance with the state court decisions, we dismiss Johnson in his individual capacity. The plaintiffs have failed to establish their claims against the remaining defendants. Accordingly, we affirm the dismissal of the complaint.

## I. BACKGROUND

Because the district court dismissed the complaint pursuant to Rule 12(b)(6), we assume all well-pleaded allegations in the complaint are true and draw all reasonable inferences in the plaintiffs' favor. *Christensen v. County of Boone, Illinois*, 483 F.3d 454, 457 (7th Cir. 2007) (per curiam); *Holman v. Indiana*, 211 F.3d 399, 402 (7th Cir. 2000). *See also Bell Atlantic Corp. v. Twombly*, 127

---

[2] In accordance with Fed. R. App. P. 43(c)(2), we grant the plaintiffs' unopposed motion to substitute the current Sheriff of Bureau County, John E. Thompson, for Johnson in his official capacity.

S. Ct. 1955, 1965 (2007). Prior to her death, Sims, a part-time newspaper reporter for the *Kewanee Star Courier*, was conducting an investigation into allegations that Sheriff Johnson engaged in campaign fraud in his election campaign and misused county funds. She had expressed concern to others that Johnson might retaliate against her for writing the story. On the day of her death, in an effort to intimidate Sims from writing the newspaper article about Johnson's misconduct, Johnson deposited for bulk mailing to the residents of the Simses' hometown a letter falsely accusing Sims's husband, William, of past and current felonious criminal conduct. Johnson then telephoned Sims, asked to speak with her, and drove to her home in Tiskilwa. Upon arrival, he showed the defamatory letter to Sims and questioned her regarding the accusations of criminal conduct by her husband. According to the allegations of the complaint, Johnson knew of Sims's heart condition, and knew or had reason to believe that reading a letter containing such extreme, outrageous accusations about her husband would cause her great emotional distress and would increase the likelihood that she would suffer a fatal heart attack.

At approximately 12:30 p.m., Sims did suffer a fatal heart attack. Johnson radioed for an ambulance at 12:47 p.m., but by the time the paramedics arrived at 12:54 p.m., Sims was not breathing and did not have a pulse. One of the paramedics described her as "cold" when he arrived. The plaintiffs' expert in emergency medicine averred that Sims died of cardiac arrhythmia provoked by extreme anger or fear and that she could have survived if she had been given CPR immediately. Johnson told the paramedics that he did not complete CPR because his rubber gloves kept breaking. Before calling the ambulance, Johnson used Sims's telephone to call the Princeton Post Office and ask a postal worker about the criminal penalties for sending defamatory letters and whether the bulk-

rate mailing of the defamatory letter could be traced. Sims's daughter found the telephone off the hook and out of her mother's reach. Following her death, Johnson dropped his own investigation regarding the defamatory letter. He also failed to investigate Sims's death and refused to cooperate with the police officers seeking to investigate her death.

Both Johnson, in his individual capacity, and the County defendants—Bureau County, the Bureau County Sheriff's Department and the Sheriff in his official capacity—filed motions to dismiss for failure to state a claim upon which relief can be granted. Magistrate Judge Evans recommended, in part, that the district court dismiss the following parties and claims: (1) the County of Bureau as a real party in interest; (2) the First, Fourth, Fifth, Eighth, and Ninth Amendment claims in Counts IX and X; (3) the prayer for punitive damages in Counts IX, X, and XI, and (4) Counts XIV, XV, XVI, and XVII against the Sheriff in his official capacity. Neither side filed objections as to these recommendations; therefore, the district court adopted these portions of the Report and Recommendation. The district court, however, rejected the portions of the Report and Recommendation that the Bureau County Sheriff's Department be retained as a party, that the substantive due process violation claims in Counts IX and X be allowed, that the conspiracy claims in Count XI be allowed, and that the supplemental state law claims be allowed. The district court accordingly granted the defendants' motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) in their entirety, and dismissed the federal claims with prejudice and the state claims without prejudice.

## II.  DISCUSSION

The plaintiffs appealed from the disposition of the motion to dismiss the individual capacity claims against

Johnson and the motion to dismiss the claims against Bureau County, the Bureau County Sheriff's Department and the Sheriff in his official capacity. However, after oral argument was heard in this appeal, the plaintiffs entered into a settlement agreement with Johnson. Although the plaintiffs and Johnson settled only the claims against Johnson, the plaintiffs further agreed to dismiss their appeal and to limit their right to collect the settlement solely from Bureau County and its insurers. When they notified this court of the settlement agreement, the plaintiffs informed the court that Bureau County understandably was already challenging the settlement agreement in the state court case and asked the court to stay its proceedings pending resolution of the enforceability of the action in state court, which we did. The Illinois Appellate Court held that the settlement agreement was enforceable with respect to Johnson in his individual capacity, but not enforceable with respect to the Sheriff's Office or the County. *Sims v. Johnson*, No. 3-05-0416 (Ill. App. 3 Dist. July 27, 2006). State law governs a suit to enforce a settlement of a federal suit. *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 506-07 (7th Cir. 2007); *Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 490 (7th Cir. 2002). At the time he entered into the settlement agreement, Johnson had resigned as Sheriff of Bureau County and was not empowered to act on behalf of the Sheriff's Office. *Cf. Carver v. Sheriff of LaSalle County*, 787 N.E.2d 127 (Ill. 2003) (holding that an acting sheriff is authorized under the Illinois Tort Immunity Act to enter into settlement agreements that bind the county for the acts of the sheriff in his official capacity). Accordingly, we grant the plaintiffs' motion to dismiss Johnson only in his individual capacity. We reject Johnson's argument that the current Sheriff in his official capacity also be dismissed based on the settlement agreement.

We review *de novo* whether the complaint states a claim upon which relief can be granted. *Christensen*, 483 F.3d at 458. Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." The statement need only " 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Bell Atlantic*, 127 S. Ct. at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). *See also Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007). In order to state a claim pursuant 42 U.S.C. § 1983, the plaintiffs must allege that a government official, acting under color of state law, deprived them of a right secured by the Constitution or laws of the United States. *Christensen*, 483 F.3d at 459. In a civil rights case alleging municipal liability, a federal court may not apply a heightened pleading standard more stringent than the usual Rule 8(a) pleading requirements. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 165 (1993).

Now that the individual capacity claims against Johnson have been settled, only three defendants remain—John E. Thompson, in his official capacity as Sheriff, the Sheriff's Department, and Bureau County. The liability of the Sheriff's Department and of the County is derivative of Thompson's official-capacity liability, and the official-capacity liability is subject to holding in *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978), that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."

In order to state a § 1983 claim against a municipality, the complaint must allege that an official policy or custom not only caused the constitutional violation, but was "the moving force" behind it. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). *See also Arlotta v. Bradley Center*, 349 F.3d 517, 521-22 (7th Cir. 2003); *Gable*

*v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002). Unless there is an unconstitutional policy, there cannot be official-capacity liability; only individual-capacity liability is possible. The "official policy" requirement for liability under § 1983 is to "distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). "Misbehaving employees are responsible for their own conduct[;] 'units of local government are responsible only for their policies rather than misconduct by their workers.'" *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007) (quoting *Fairley v. Fermaint*, 482 F.3d 897, 904 (7th Cir. 2007)). A plaintiff may demonstrate an official policy through: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. *Lewis*, 496 F.3d at 656.

The first question, therefore, is whether the complaint alleges a direct causal link between a policy or custom of the Sheriff's Department and the alleged constitutional violations. *City of Canton*, 489 U.S. at 385. The complaint alleges that the Sheriff's Department had no policy or custom at the time of Sims's death for handling emergency medical situations and no protocol or policy manual regarding CPR certification or training. The remaining allegations, however, make clear that the events about which the plaintiffs complain are well beyond a failure to rescue Sims or provide emergency medical services. The complaint contends that Johnson murdered Sims by inducing a heart attack. The plaintiffs do not contend that the Sheriff's Department had a policy of frightening

reporters to death, or even of failing to rescue journalists who write critical articles. The plaintiffs have not alleged that such an express policy exists, nor is it possible to infer there is such a policy at work. In cases asserting an implicit policy or a gap in express policy, "what is needed is evidence that there is a true municipal policy at issue, not a random event." *Phelan v. Cook County*, 463 F.3d 773, 790 (7th Cir. 2006) (quoting *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005)). Nor have the plaintiffs asserted that Johnson held final policymaking authority with respect such policies. *Killinger v. Johnson*, 389 F.3d 765, 771-72 (7th Cir. 2004). The official in question must be the final policymaker in the particular area or on the particular issue raised in the case. *Kujawski v. Bd. of Comm'rs of Bartholomew, Ind.*, 183 F.3d 734, 738 (7th Cir. 1999) (quoting *McMillian v. Monroe County*, 520 U.S. 781, 785 (1997)).

Although the plaintiffs baldly assert on appeal that Johnson's actions were "the outrageously reckless, probably criminal, activity of a state actor under of color of his state office," the allegations of the complaint do not show that Johnson's conduct was related to the performance of his official duties. Not every action taken by a state official is considered to have occurred under color of state law. *Honaker v. Smith*, 256 F.3d 477, 484 (7th Cir. 2001) (quoting *Hughes v. Meyer*, 880 F.2d 967, 971 (7th Cir. 1989)). An action is taken "under color of state law" if it involves a "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *National Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). Whether a particular action was under color of state law depends "largely on the nature of the specific acts the police officer performed, rather than on merely whether he was actively assigned at the moment to the

performance of police duties." *Pickrel v. City of Springfield, Illinois*, 45 F.3d 1115, 1118 (7th Cir. 1995). *See also Martinez v. Colon*, 54 F.3d 980, 986-87 (1st Cir. 1995). The allegations of the complaint, even viewed in the light most favorable to the plaintiffs, show that Johnson was off on a frolic, trying to protect a personal interest.

In an attempt to show his actions were part of an official investigation, the plaintiffs argue that Johnson went to Sims's house to investigate the defamatory letter regarding her husband, but the complaint recognizes that Johnson knew the statements in the letter were false and that he immediately dropped the "apparent investigation" into the letter after Sims's death. Similarly, the allegations do not support the plaintiffs' argument that Johnson was able to gain entry into the Sims's house only because of his position as Sheriff. *See West v. Atkins*, 487 U.S. 42, 49 (1988). According to the complaint, Sims was investigating Johnson's campaign misconduct, she asked to speak with him numerous times, he left a message on her answering machine, and she returned the call to arrange his visit to the house. These are not actions of a state actor performed under color of state law but are the private actions of a person who happened to be a county officer. His actions were in furtherance of his personal interests, even if he performed them while on duty. *Pickrel*, 45 F.3d at 1118.

In light of our conclusion that the complaint failed to state an official capacity claim, we only briefly address the plaintiffs' remaining arguments. Plaintiffs argue that neither the magistrate judge nor the district court addressed their claim that Johnson's actions deprived Sims of her First Amendment right to freedom of the press. This argument overlooks the magistrate judge's finding that the plaintiffs failed to make any factual or other required allegations in connection with their First, Fourth, Fifth, Eighth, and Ninth Amendment claims and the

judge's corresponding conclusion that these claims should be stricken pursuant to Fed. R. Civ. P. 8(a)(2). Indeed, the complaint does nothing more than list the rights guaranteed under the First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments and baldly assert that the defendants violated these rights. Plaintiffs failed to object to the magistrate judge's recommendation that these claims be stricken, and accordingly waived their right to challenge the dismissal of the First Amendment claim on appeal. *See* 28 U.S.C. § 636(b)(1); *United States v. Sachsenmaier*, 491 F.3d 680, 683 (7th Cir. 2007); *Egert v. Connecticut General Life Ins. Co.*, 900 F.2d 1032, 1039 (7th Cir. 1990).

Plaintiffs also challenge the district court's dismissal of their claim under 42 U.S.C. § 1985 for denial of their right of access to the courts. They alleged that Johnson and "possibly other persons employed by the Bureau County Sheriff's Department" denied them a fair opportunity to vindicate Sims's death through judicial redress by intentionally covering up the circumstances of her death and refusing to cooperate with police officers seeking to investigate the death. The plaintiffs' complaint fails to state a claim of conspiracy to deprive their right of access to the courts because there are no allegations that Johnson conspired with another person to conceal information or otherwise hamper the investigation into Sims's death. *See* 42 U.S.C. § 1985(2); *Wright v. Illinois Dept. of Children & Family Services*, 40 F.3d 1492, 1507 (7th Cir. 1994). Even under notice pleading, a complaint must indicate the parties, the general purpose, and approximate date of the agreement to form a conspiracy so that the defendant has notice of the charges against him. *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002). The plaintiffs' reliance on *Bell v. City of Milwaukee*, 746 F.2d 1205, 1261 (7th Cir. 1984), *overruled on other grounds by Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005); and *Ryland v.*

*Shapiro*, 708 F.2d 967, 972 (5th Cir. 1983), is misplaced and ignores an important factor in *Bell* and *Ryland*—that several defendants conspired together to cover up the deaths. Here, the allegations suggest that Johnson acted alone, and the district court properly concluded that such allegations are insufficient to state a conspiracy claim.

We note that after the district court dismissed Bureau County and entered its judgment, we affirmatively held that "a county in Illinois is a necessary party in any suit seeking damages from an independently elected county officer (sheriff, assessor, clerk of court, and so on) in an official capacity." *Carver v. Sheriff of LaSalle County, Illinois*, 324 F.3d 947, 948 (7th Cir. 2003). In light of our decision in *Carver*, we agree with the plaintiffs that Bureau County would have been a necessary party to the case if the complaint had stated a claim against the Sheriff in his official capacity.

Finally, we must resolve several other matters that have arisen in the course of the appeal. The County defendants seek sanctions against plaintiffs' counsel for revealing discussions that were had in the course of participating in proceedings with this court's Settlement Conference Office. Of course, settlement negotiations are confidential for most purposes, *In re Young*, 253 F.3d 926 (7th Cir. 2001), and counsel should never reveal such conversations in an attempt to gain a strategic advantage. But it is not clear in this case that counsel engaged in sanctionable conduct with regard to the settlement proceedings, and we deny the appellees' motion for sanctions.

We also deny the motion to strike certain factual statements in the plaintiffs' brief. In reviewing the propriety of the dismissal of the plaintiffs' complaint, we have confined our review to the allegations, liberally construed, as set forth in the plaintiffs' complaint.

### III. CONCLUSION

Because the complaint does not allege a direct, causal link between Sims's death and a policy or custom of the Sheriff and the Sheriff's Department, only individual capacity liability would be possible. The plaintiffs' settlement with appellee Greg Johnson in his individual capacity therefore resolves everything, and we affirm the dismissal of the complaint.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*