ILLINOIS BIBLE COLLEGES ASSOCIATION, et al., Plaintiffs-Appellants,

v.

Lindsay K. H. ANDERSON, Chair of the Illinois Board of Higher Education, Defendant-Appellee.

No. 16-1754

United States Court of Appeals, Seventh Circuit.

Argued December 8, 2016

Decided August 29, 2017

As Amended on Denial of Rehearing and Suggestion for Rehearing En Banc October 5, 2017

John W. Mauck, Sorin Adrian Leahu, Noel W. Sterett, Attorneys, MAUCK & BAKER, Chicago, IL, Erik William Stanley, Attorney, ALLIANCE DEFENDING FREEDOM, Scottsdale, AZ, for Plaintiffs-Appellants.

Richard S. Huszagh, Brett E. Legner, Attorneys, OFFICE OF THE ATTORNEY GENERAL, Civil Appeals Division, Chicago, IL, for Defendant-Appellee.

Before MANION, KANNE, and HAMILTON, Circuit Judges.

MANION, Circuit Judge.

After graduating from high school, students who go on to college hope to receive a degree to qualify for future employment. The question in this case is what does the State of Illinois require for post-secondary educational institutions to issue a degree? Three Illinois statutes regulate post-secondary educational institutions. Together, these statutes require private junior colleges, colleges, and universities which offer degrees to obtain a certificate of approval and permission to issue degrees. The Illinois Board of Higher Education enforces these statutes and before authorizing degree-granting institutions to issue degrees, it conducts a review of the operations, programs, faculty, and facilities. The plaintiffs in this case include two associations representing religious institutions of higher education, several individual bible colleges, and a student, Leigh Pietsch. They have sued the Board of Higher Education, alleging the three state statutes violate their First Amendment and Equal Protection rights, as well as the Illinois constitution and Illinois Religious Freedom Restoration Act. The defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court granted the motion and the plaintiffs appeal.

On appeal, the plaintiffs pursue only their federal constitutional claims. They first argue the Illinois regulations violate the Establishment Clause by entangling the government with their religious operations. However, the plaintiffs have not sought certification of approval from the State under the applicable statutes. Therefore, there is no basis to believe that the regulations would infringe on their religious beliefs or practices or would unnecessarily entangle the government in religion. Accordingly, the plaintiffs' Establishment Clause claim must fail. Likewise, the plaintiffs' Free Exercise claim fails because the statutes are neutral laws of general application and apply equally to secular and religious institutions. The plaintiffs' Equal Protection claim fares no better: While the state statutes exempt older educational institutions from the governing mandates, the law is clear that, when no improper discrimination is involved, the government may include a grandfather clause in legislation without violating the guarantee of Equal Protection. Finally, the student-plaintiff alleges a violation of his right to practice a profession of his choice. But the regulations do not impact that choice. Rather, they merely determine whether he may obtain a degree from specific post-secondary institutions. The district court, therefore, properly dismissed the plaintiffs' complaint and we affirm.

I.

The Illinois Association of Bible Colleges, Civil Liberties for Urban Believers, Providence Baptist College, Dayspring Bible College & Seminary, United Faith Christian Institute, and student, Leigh Pietsch, (collectively "the Bible Colleges") sued the Illinois Board of Higher Edu-

cation, through its chair Lindsay K. Anderson ("the Board"). The individual Bible Colleges involved in this litigation are also affiliated with faith communities and all serve as educational ministries of their churches.

The Bible Colleges alleged that the Private College Act, 110 ILCS 1005/0.01 *et seq.*, the Academic Degree Act, 110 ILCS 1010/0.01 *et. seq.*, and the Private Business and Vocational Schools Act of 2012, 105 ILCS 426/1 *et. seq.*, violate the First Amendment and Equal Protection Clause of the United States Constitution, as well as the Illinois constitution and the Illinois Religious Freedom Restoration Act. Pietsch alleged the statutes also violate his First Amendment and Equal Protection Clause rights and his constitutional right to pursue the calling of his choice.

The three statutes at issue regulate different aspects of higher education. For instance, the Private College Act regulates the operation of private colleges, junior colleges, and universities that offer "degrees" and requires such institutions to obtain a "certificate of approval" from the Board. 110 ILCS 1005/2. The statute defines a "degree" as "any designation, appellation, series of letters or words, or other symbol which signifies or purports to signify that the recipient thereof has satisfactorily completed an organized academic program of study beyond the secondary school level." 110 ILCS 1005/1. Decisions by the Board under the Private College Act are subject to judicial review. 110 ILCS 1005/12.

The Academic Degree Act also regulates post-secondary education and prohibits a "degree-granting institution" from "issuing" degrees without Board approval. The Academic Degree Act definition of "degree" mirrors the term's use in the Private College Act. And like the Private College Act, decisions of the Board under the Aca-demic Degree Act are subject to judicial review. 110 ILCS 1010/10.

The third statute at issue, the Private Business and Vocational Schools Act of 2012, requires vocational schools which issue "certificates" or "certificates of completion" to obtain approval from the Board. The Private Business and Vocational Schools Act exempts schools which provide entirely religious or theological education. 105 ILCS 426/30.

Before issuing a permit of approval, the Board evaluates post-secondary schools based on a variety of factors, such as "the caliber and content of each course or program of instruction," the number of credit hours required for undergraduate and graduate degrees, the educational credentials of faculty and applicants, and the institution's record-keeping. 23 Ill. Adm. Code 1030.30. The Board also looks at the institution's finances, the appropriateness of the program's promotional materials, the sufficiency of facilities and equipment, and clear communications concerning tuition and fees charged, among other things. Obviously, this is a very comprehensive review.

The Bible Colleges offer an array of courses outside the sphere of religion and theology, in areas ranging from office skills and cooking, to Spanish, music, and botany. Nonetheless, the Bible Colleges have never sought certification from the Board and claim they are exempt from the statutes. Yet the Bible Colleges wish to offer bachelor, master, and doctorate degrees without government oversight. The plaintiff schools insist that without the ability to issue degrees, they are at a competitive disadvantage in attracting students with out-of-state bible colleges which offer degrees.

After the Board informed the colleges that they were subject to the higher-edu-

cation statutes and must submit a series of applications and permits for approval, the Bible Colleges filed this suit. In their complaint, the Bible Colleges alleged the three Illinois statutes violate the Establishment, Free Exercise, and Equal Protection Clauses of the United States Constitution. They also alleged violations of the Illinois constitution and the Illinois Religious Freedom Restoration Act, but they later voluntarily dismissed those state law claims and they are not at issue on appeal.

The Board moved to dismiss the Bible Colleges' complaint pursuant to Rule 12(b)(6). In their response, the Bible Colleges made clear that they were presenting an as-applied challenge—not a facial challenge—and that they sought a blanket exemption from the three Illinois statutes regulating post-secondary education based on their religious opposition to complying with the law. The district court concluded that the Bible Colleges' as-applied challenge failed as a matter of law and granted the Board's motion to dismiss. The Bible Colleges appeal.

## II.

On appeal, the Bible Colleges advance the same arguments presented below that the three Illinois statutes governing post-secondary education violate the Establishment, Free Exercise, and Equal Protection Clauses of the Constitution and that the district court erred in dismissing their complaint pursuant to Rule 12(b)(6). Additionally, Pietsch argues the district court erred in dismissing his individual claims premised on his First Amendment right to association, as well as his constitutional right to pursue the calling of his choice.

■ To survive a motion to dismiss, a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d

868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, 129 S.Ct. 1937 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This court reviews a district court's motion to dismiss *de novo,* accepting all well-pleaded factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiffs' favor.

### A. Establishment Clause

■ The Bible Colleges first argue that the Illinois higher-education statutes violate the Establishment Clause which, of course, provides that "Congress shall make no law respecting an establishment of religion." Specifically, the plaintiffs claim that the Board is impermissibly setting standards for religious education without a secular justification. *See Lemon v. Kurtzman,* 403 U.S. 602, 612–13, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971).

■ However, contrary to the Bible Colleges' argument, the statutes at issue do not set a standard for "religious" education. Rather, they set criteria under which the Board will review all post-secondary institutions of education and degrees issued by those schools. And states have a valid secular interest in maintaining standards for post-secondary institutions. *Id.* at 613, 91 S.Ct. 2105 ("A State always has a legitimate concern for maintaining minimum standards in all schools it allows to operate.").

Alternatively, the plaintiffs claim that Illinois defines "degree" so broadly "that the religious colleges in this case cannot describe their students' achievements in any conceivable way without violating the State's" licensing statutes. For instance,

the plaintiffs "contend that even 'diplomas' and 'certificates,' which signify or purport to signify completion of an organized academic program of study beyond the secondary school level, fall within the scope of the act." The Bible Colleges then argue that "[w]ithout the ability to describe student achievement, religious colleges are severely inhibited from pursuing their mission."

In its brief before this court, the Board argues that " 'degree' has a longstanding, well-established, and legally recognized meaning: it is a title granted by a college, university, or professional school upon completion of a program of study requiring a minimum number of courses." But in presenting this definition to the court, the Board ignores the statutory definition of "degree." As the plaintiffs point out, this raises the specter of unbounded reach by providing that "degree" means: "any designation, appellation, series of letters or words, or other symbol which signifies or purports to signify that the recipient thereof has satisfactorily completed an organized academic program of study beyond the secondary school level." 110 ILCS 1005/1 and 110 ILCS 1010/2. Accordingly, we agree with the Bible Colleges that the Illinois statutory definition of "degree" (excerpt above) is so broad that it seemingly bars any denotation of successful completion of the course work at the Bible Colleges. Yet the Bible Colleges must be able to provide some formal recognition to those who have worked and studied in a way their community deems appropriate to join in their church's mission. The Bible Colleges might have a legitimate Establishment Clause claim if they sought to issue some formal acknowledgment of religious training but were barred from doing so. *See, e.g., HEB Ministries v. Texas Higher Educ. Coordinating Bd.*, 235 S.W.3d 627, 667 (Tex. 2007) ("To give but one example, subchapter G would not prohibit a religious institution from issuing a document certifying that 'John Doe has completed an advanced course of study in X and is qualified to minister in Y church.' "). But in presenting their as-applied challenge to the State's licensing laws, the Bible Colleges seek a blanket exemption from the statutes and the right to issue whatever recognition they desire, including degrees which do have a well-established and understood meaning such as a bachelor's, master's, or doctorate degree. *See, e.g., id.* at 668 (Jefferson, C.J., dissenting) ("Words like 'bachelor's,' 'master's,' and 'doctorate' have acquired meaning that permits them to stand on their own . . . and permit, as here, an unaccredited institution's graduates to overstate their credentials."). The Bible Colleges explain that it is more difficult to attract students without the ability to issue such degrees. They oppose seeking State approval for their programs for doctrinal reasons and at the same time want the right to describe their programs of study in any way they deem appropriate.

Because the plaintiffs did not apply for certification, the Board did not evaluate the content of the religious education or the qualifications of their professors. Without such a review, the question is not before this court. It is possible that State officials could apply these statutes to plaintiffs in ways that would pose problems under the Establishment or Free Exercise Clauses. But unless and until plaintiffs seek certifications of approval, plaintiffs cannot plausibly allege that the statutes have been applied to them in unconstitutional ways or that the statutes inhibit (or advance) religion. *See Lemon*, 403 U.S. at 612–13, 91 S.Ct. 2105 (a law violates the Establishment Clause if its primary effect advances or inhibits religion).

The Bible Colleges also argue that the statutes entangle the State with religion by requiring the Board to evaluate how religion is taught. But, as just noted, this appeal concerns an as-applied challenge to the statute and the Bible Colleges never sought certification from the Board. Thus, at this time, the plaintiffs cannot plausibly allege that the Board became excessively entangled with religion. *See id.* (holding that a law may not excessively entangle the government with religion). Should that happen, the Bible Colleges would have recourse at that point.

Nonetheless, the Bible Colleges argue the Illinois statutes violate the *Lemon* test based on the plurality opinion in *HEB Ministries*, 235 S.W.3d 627, 647 (Tex. 2007). *HEB Ministries*, of course, is a Texas Supreme Court case and is not controlling. In any event, we find the analysis flawed. The plurality in that case reasoned that "*a* principal or primary effect [of the statute] is to advance religious education the State approves and inhibit what it does not." *HEB Ministries*, 235 S.W.3d at 647.

The plurality further asserted that it is "beyond serious dispute that the statute clearly and excessively entangles the government in matters of religious instruction" because the Board's standards "cannot be applied without a thorough, detailed, and repeated examination of an institution's operations and curriculum." *Id.*

But as Chief Justice Jefferson's dissent in *HEB Ministries* recognized, "allowing a religious institution to participate in secular regulatory schemes simply does not violate the Establishment Clause." *Id.* at 666 (Jefferson, C.J., dissenting). Further, like the dissent in *HEB Ministries*, we find the reasoning of *State v. Clarksville School of Theology*, 636 S.W.2d 706 (Tenn. 1982), and *N.J. State Board of Higher Education v. Board of Directors*, 90 N.J.

470, 448 A.2d 988 (1982), more persuasive. In *Clarksville*, as the Tennessee Supreme Court explained:

> [The Tennessee statute] places neither a direct nor indirect burden upon the free exercise of religion by the defendants nor threatens an entanglement between the affairs of church and state.... [T]he Act does not regulate the beliefs, practices or teachings of any institution; it merely sets forth minimum standards which must be met in order for an institution to be authorized to issue degrees. Moreover, the evidence shows that the granting of degrees is a purely secular activity. It is only this activity that brings the School under the regulation of the Act.

636 S.W.2d at 709.

Similarly, the Supreme Court of New Jersey held "that the State's program for licensing institutions of higher education is applicable to sectarian institutions and that facially it does not ... create an excessive state entanglement with religion." *Shelton College*, 448 A.2d at 997–98, The court reasoned that "[t]he Establishment Clause permits minor, unobtrusive state supervision of religiously oriented schools" and that "[n]one of the education statutes or regulations here in question mandates active involvement of the sovereign in religious activity." *Id.* at 997 (internal quotation omitted). The court added that the statutes did not require "regulation of the *content* of an educational program." *Id.*

We agree with *Clarksville* and *Shelton*'s reasoning: The Illinois statutes do not regulate the beliefs of any institution or the content of the education. Further, the Bible Colleges "can choose to not comply with the Act and yet may continue to train ministers as [they choose]; such non-compliance with the Act will simply prohibit the School from granting degrees." *Id.*

Of course, as we have already stressed, the Board cannot so broadly characterize "degrees" that it effectively prevents the Bible Colleges from signifying that students have successfully completed the minister training. But that is not the Bible Colleges' complaint, nor the Board's practice. *See, e.g.*, August 26, 2013 Letter from Board to Dayspring Bible College (stating certificates or diplomas may be awarded for courses of study in religion or theology). For these reasons, we conclude that plaintiffs have not plausibly alleged that the Illinois statutes have been applied to them in ways that would violate the Establishment Clause of the First Amendment.

### B. Free Exercise Clause

Alternatively, the Bible Colleges argue the Illinois higher-education statutes violate the Free Exercise Clause of the First Amendment. The district court rejected this argument and found the Supreme Court's holding in *Employment Division v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), governed. In *Smith*, the Court held: "The right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Id.* at 879, 110 S.Ct. 1595. Under *Smith*, a neutral law of general applicability is constitutional if it is supported by a rational basis.

■ Of course, as the Supreme Court recently made clear in *Trinity Lutheran Church of Columbia, Inc. v. Comer*, —— U.S. ——, 137 S.Ct. 2012, 2021, 198 L.Ed.2d 551 (2017), a law may not "regulate or outlaw conduct because it is religiously motived," and "[t]he Free Exercise Clause protects against laws that 'impose[ ] special disabilities on the basis of … religious status.'" (quoting *Church of*

*Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 533, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993)).

■ The statutes in this case conform to the strictures of the Free Exercise Clause. First, they are neutral: They do not target religion or religious institutions. There is no allegation of an underlying religious animus. Further, certification of schools is based on the State's review of secular criteria that focuses on the schools' faculty, facilities, and courses. The statutes are also generally applicable, applying equally to secular and religious post-secondary institutions. Likewise, the laws are rationally related to a valid government purpose, namely protecting students and employers from relying on degrees with no true academic value, and protecting legitimate institutions of higher education by safeguarding the value of their degrees. And finally, at least at this point, there is no evidence that regulation of these factors imposes a special disability on religions or religious beliefs and practices.

The Supreme Court's decisions in *Locke v. Davey*, 540 U.S. 712, 124 S.Ct. 1307, 158 L.Ed.2d 1 (2004), and *Trinity Lutheran* support our conclusion. In *Locke*, the plaintiff challenged a Washington law which barred students from using state scholarship funds to pursue a devotional theology degree. The Supreme Court held that Washington's restriction did not infringe on a student's First Amendment Free Exercise right because the law did not require individuals to "choose between their religious beliefs and receiving a government benefit." *Locke*, 540 U.S. at 721, 124 S.Ct. 1307.

Conversely, in *Trinity Lutheran* the Supreme Court held that a Missouri law barring religious schools from participating in a state-funded program violated the Free Exercise Clause because "Trinity Luther-

an is put to the choice between being a church and receiving a government benefit." 137 S.Ct. at 2024. In reaching this conclusion, the Supreme Court distinguished *Locke*, explaining the student in *Locke* "was not denied a scholarship because of who he was; he was denied a scholarship because of what he proposed to do—use the funds to prepare for the ministry." *Id.* at 2023. The student in *Locke* "was free to use [his] scholarships at 'pervasively religious schools.'" *Id.* He could "pursue a secular degree at one institution while studying devotional theology at another." *Id.* A student could also use "scholarship money to attend a religious college and take devotional theology courses there." *Id.* The only thing a student "could not do was use the scholarship to pursue a degree in that subject." *Id.* at 2024. In contrast, the State "expressly require[d] Trinity Lutheran to renounce its religious character in order to participate in an otherwise general available public benefit program, for which it [was] fully qualified." *Id.* at 2024. The Supreme Court thus held in *Trinity Lutheran* that *Locke* did not control.

The Illinois regulatory scheme at issue in this case falls on the *Locke* side of the line. The colleges may teach their faith without interference and use whatever faculty and methods they believe appropriate. And they may communicate their faith in any way they desire. It is only if the Bible Colleges seek to issue degrees that they must comply with the standards of the Illinois statute; only when the colleges venture into the secular sphere is regulatory oversight required. Even then, the Board does not assess the underlying religious belief being conveyed.

Again, the Bible Colleges cite to *HEB Ministries* : In *HEB Ministries*, the Texas Supreme Court plurality stated that "[a] law is not neutral or generally applicable for purposes of applying the Free Exercise

Clause merely because it affects everyone; it is important how religion is affected differently because it is religion." 235 S.W.3d at 659. The *HEB Ministries* court explained "the fact that [a statute] burdens all private post-secondary institutions does not lessen its significant, peculiar impact on religious institutions offering religious courses of study." *Id.* at 643.

We disagree. The burdens on post-secondary institutions do not differ based on the religious nature of the institution: Both secular and non-secular institutions must satisfy the same criteria, and there is no basis to conclude that a religious institution would face any peculiar or significant impact.

Alternatively, the Bible Colleges argue the statutes are nonetheless subject to strict scrutiny because following *Smith*, the Supreme Court in *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993) carved out two exceptions to the general holding that such laws need only a rational basis to withstand attack: Neutral and generally applicable laws are still subject to strict scrutiny if (1) the government is allowed to make individualized exemptions from a general requirement, or (2) the claim is a hybrid-rights claim because it triggers additional constitutional rights. *Id.* at 524, 113 S.Ct. 2217.

Neither exception to *Smith's* general rule applies in this case. First, the Illinois statutes do not provide for individualized exemptions to the licensing requirement. They do require the Board to consider individual factors, such as looking to "the caliber and content of each course or program of instruction," and the "education, experience and other qualifications of faculty." But that individualized factors govern the application of a law of general applicability does not render *Smith's* holding inapplicable. For instance, the majority

of circuits, including this one, have concluded that zoning laws which provide the opportunity for individualized variances are neutral laws of general applicability. *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 764-65 (7th Cir. 2003); *Fortress Bible Church v. Feiner*, 694 F.3d 208, 220 (2d Cir. 2012) (collecting cases).

Second, the Bible Colleges have not presented a hybrid-rights claim. While they attempt to tie their free exercise claim to a free speech claim by arguing the regulations impact the "communication of religious beliefs," such an argument is misplaced. As the dissent in *HEB Ministries* explained, the communicative aspect of speech considered by the Court in *Smith* illustrated a "much higher involvement necessary to implicate the freedom of speech analysis." *See, e.g., HEB Ministries*, 235 S.W.3d at 667 (Jefferson, C.J., dissenting).

█ Further, "in *Smith*, the Supreme Court noted that, in cases implicating the Free Exercise Clause in conjunction with other constitutional protections, such as freedom of speech and freedom of association, the First Amendment may subject the application to religiously motivated action of a neutral, generally applicable law to a heightened level of scrutiny." *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d at 764–65 (citing *Smith*, 494 U.S. at 881–82, 110 S.Ct. 1595). But we added: " '[A] plaintiff does not allege a hybrid rights claim entitled to strict scrutiny analysis merely by combining a free exercise claim with an utterly meritless claim of the violation of another alleged fundamental right.' " *Id.* 765 (quoting *Miller v. Reed*, 176 F.3d 1202, 1207–08 (9th Cir. 1999)).

In this case, the Bible Colleges have merely recast the same Free Exercise Clause objection to the Illinois statutes under a variety of other constitutional clauses. Yet no matter how framed, the Bible Colleges' claims all lack merit, at least before we see how the statutes are actually applied to the plaintiffs. Accordingly, the heightened scrutiny afforded hybrid claims does not apply here.

The Bible Colleges also attempt to circumvent *Smith* by citing to *Hosanna-Tabor Evangelical Lutheran Church v. Equal Employment Opportunity Commission*, 565 U.S. 171, 132 S.Ct. 694, 181 L.Ed.2d 650 (2012), and arguing the government is infringing on their right to shape their own faith and mission through their appointments of faculty. The Bible Colleges reason that because the Illinois statutes direct the Board to assure that faculty teaching at post-secondary institutions of education hold minimal qualifications, the laws infringe on their right to select those who will personify their beliefs.

*Hosanna-Tabor* does not support the plaintiffs' argument. The question before the Court in *Hosanna-Tabor* was whether a private Christian school could be sued under the Americans with Disabilities Act ("ADA") after it fired a teacher. After concluding that the teacher served in a ministerial role for the school, the Court held the Establishment Clause prevented the plaintiff from suing under the ADA because "[s]uch action interferes with the internal governance of the church, depriving the church of control over the selection of those who will personify its beliefs."

Unlike the facts in *Hosanna-Tabor*, the Illinois statutes do not require the church sponsors of the Bible Colleges to hire or retain any specific minister. The Bible Colleges are free to hire or fire a faculty member anyone they see fit. They are also free to teach students religion and theology and to incorporate faith-based instruction in all subjects without Board over-

642

sight. But what they cannot do is operate entirely without State oversight while issuing whatever degrees they deem appropriate, such as a bachelor's, master's, or doctorate degree. Requiring compliance with the State's secular statutory requirements does not implicate *Hosanna-Tabor*'s holding.

C. Remaining Constitutional Claims

■ The Bible Colleges present several additional constitutional claims but, for the most part, they parallel their Free Exercise and Establishment Clause claims. For instance, the Bible Colleges argue that their allegations were sufficient to support a Free Speech claim. Here they argue that the statutes infringe on their right to communicate with the students, first by defining "degree" "so broadly that any method of communicating student achievement beyond the secondary school level is foreclosed." But, as explained above, the Bible Colleges seek a blanket exemption to the regulation—absolutely no oversight—as well as the right to issue bachelor's, master's, and doctorate degrees or whatever degree they desire. The Board does not infringe on the Bible Colleges' right to free speech by regulating degree-issuing postsecondary education; rather, any interference with the Bible Colleges' speech is at most incidental and within constitutional bounds.

Alternatively, the Bible Colleges claim that their right to free speech is infringed because they are prohibited from issuing a bachelor's degree to students who complete a "four-year academic program and a rigorous curriculum," unless they "first disregard[ ] its religious principles and submit[ ] to the State intervention of its religious teaching." But the Bible Colleges never submitted to the State's review of their degree programs, so any claim that the State applied a "content-based" regula-

tion of their speech based on the Bible Colleges' "religious principles" or "religious teachings" fails, or is at least premature before the laws are actually applied to them. Accordingly, the district court properly dismissed the Bible Colleges' Free Speech claims.

■ The Bible Colleges also argue that the Board violated their constitutional right to freedom of association. Specifically, they argue that the Board's regulation interferes with their "voluntary associations which have been organized to assist in the expression and dissemination of religious doctrine." However, the Board does not limit or interfere with the plaintiffs' right to associate or disseminate religious doctrine. Rather, if the Bible Colleges wish to issue degrees they must comply with the statutory mandates. While framed differently than their Free Exercise claim, the Bible Colleges' freedom of association claim is governed by the same analysis and fails for the same reason.

Finally, the Bible Colleges argue that the Academic Degree Act and the Private College Act violate the Equal Protection Clause because they both contain grandfather clauses which exempt educational institutions that had been in existence prior to 1945 and 1961 respectively. 110 ILCS 1005/2 and 110 ILCS 1010/4(a). By exempting older institutes of higher learning from the statutes, the Bible Colleges claim the State is violating "[t]he basic requirement of the Equal Protection Clause [ ] that 'all persons similarly situated should be treated alike.'" Appellants Reply Brief at 23 (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)).

■ The Bible Colleges' Equal Protection claim is easily resolved. Distinguishing educational institutions by their founding date does not implicate a fundamental right or a protected class. That the Bible

Colleges are religious colleges does not alter that result, because the statutes at issue do not distinguish between secular and religious colleges but instead differentiate *all* institutes of higher education equivalently other than those established before the date the statutes were passed. Thus, we review the statutes for a rational basis. And this court has held that in the absence of some sort of invidious discrimination "[g]randfather clauses—laws that . . . curtail the application of new rules to existing entitlements—protect expectation interests, which is enough to make them rational and so defeat challenge under the equal protection clause." *McCann v. City of Chicago*, 968 F.2d 635, 638 (7th Cir. 1992). Accordingly, the Bible Colleges' Equal Protection claim cannot succeed and dismissal was appropriate.

In addition to joining the Bible Colleges in their various constitutional claims—which fail—plaintiff Leigh Pietsch adds a claim premised on his constitutional right to work in the profession of his choice. While the Supreme Court has recognized the Constitution protects the right to work, regulating the Bible Colleges does not implicate those rights. Pietsch is free to attend the Bible Colleges and pursue any job desired. The regulations do not impact those rights. But Pietsch does not have a constitutional right to obtain a degree from a college which refuses to comply with State regulations even if that impacts his marketability. Therefore the district court properly dismissed Pietsch's claims.

### III.

The Bible Colleges and student Pietsch seek a complete exemption from the Illinois statutes governing oversight of post-secondary education based on the Free Exercise and Establishment Clauses of the constitution. But the Illinois statutes apply equally to secular and religious post-secondary institutions and are thus neutral and generally applicable. The State also has several secular reasons for requiring Board oversight of the educational institutions—to safeguard students and employers from sub-standard or fraudulent degrees and to protect legitimate institutions of higher learning from dilution of their degrees. The statutes also do not advance or inhibit religion or excessively entangle the government with religion. Accordingly, the district court properly dismissed the plaintiffs' religious-clause claims.

The plaintiffs' other claims fare no better. Their right to free speech does not include a right to use deceptive language to describe a post-secondary degree, and the Equal Protection Clause recognizes the validity of grandfather clauses. Finally, Pietsch's allegations do not support a constitutional claim based upon his right to work. For these and the foregoing reasons, we AFFIRM.