In the

# United States Court of Appeals

## For the Seventh Circuit

No. 21-2756

VICTOR GONZALEZ, as the Special Administrator of the Estate of Roger Gonzalez, Deceased,

*Plaintiff-Appellant,*

*v.*

MCHENRY COUNTY, ILLINOIS, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15-cv-776 — **Philip G. Reinhard**, *Judge.*

ARGUED MARCH 31, 2022 — DECIDED JULY 26, 2022

Before MANION, HAMILTON, and BRENNAN, *Circuit Judges.*

MANION, *Circuit Judge.* Victor Gonzalez, representing the estate of the decedent Roger Gonzalez, appeals the district court's dismissal of his claims under 42 U.S.C. § 1983 against McHenry County, current Sheriff Bill Prim in his official capacity, and former Sheriff Keith Nygren in his personal capacity. We shall refer to Victor Gonzalez by his surname and to Roger Gonzalez as the decedent.

Gonzalez alleges that the McHenry County jail maintained an unwritten policy of accepting any pretrial detainee into its custody regardless of its ability to treat his medical conditions and that this policy directly harmed the decedent. But Gonzalez does not allege how the conditions of the decedent's detention were objectively unreasonable or how the alleged policy harmed the decedent. Furthermore, he does not explain what other options were available to the county—sheriffs cannot release pretrial detainees on their own prerogative. Nor does Gonzalez allege that Nygren was personally involved in the actions that led to the decedent's death as required to sustain a section 1983 claim based on individual liability. Therefore, we must affirm the district court's judgment.

The decedent was admitted to the McHenry County jail in October 2013 as a pretrial detainee. The complaint does not disclose the charges against the decedent, but we take it as undisputed that he was incarcerated under a court order. At the time of admission to the jail, the decedent weighed 400 pounds and had several serious medical conditions, including chronic hepatitis C, renal failure, edema, cirrhosis, and congestive heart failure. During his incarceration, the decedent gained 60 pounds and suffered several medical incidents of varying severity. For example, jail personnel discovered the decedent unresponsive on the ground in his cell on multiple occasions. In each case, jail personnel promptly took the decedent to the hospital where his problems were treated. He returned to the jail after each hospital stay. All told, the decedent was transported to the hospital eight times. On a few of those occasions, he was hospitalized for more than two weeks.

After the decedent pleaded guilty, he was transferred in September 2014 to the Northern Receiving Center of the Illinois Department of Corrections (IDOC). He died in IDOC custody a little over two months later.

Gonzalez brought section 1983 claims alleging that "the official policy of the Jail was to accept custody of all persons charged with crimes who could not post bond or otherwise secure pretrial release without regard to the inability of the Jail to accommodate that person's serious medical needs." He also claims that the sheriffs "knew that the Jail could not accommodate a person afflicted with the serious medical needs of [the] decedent" yet turned "a blind eye" to his plight. The defendants filed a motion to dismiss, which the district court granted.[1] Gonzalez appeals.

We review an order granting a motion to dismiss *de novo*. *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 319 (7th Cir. 2021). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks committed). A claim has "facial plausibility" when the allegations allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* We are not required to accept mere "labels and conclusions." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007).

The Due Process Clause of the Fourteenth Amendment imposes obligations on government officials to safeguard the

---

[1] Gonzalez filed claims against additional parties, including medical institutions and providers who treated the decedent, but those claims have been withdrawn or settled and are not at issue here.

health and safety of pretrial detainees, and section 1983 provides a cause of action for detainees (or, as here, their successors) to vindicate those constitutional guarantees. *See Daniel v. Cook County*, 833 F.3d 728, 733 (7th Cir. 2016). To state a claim for inadequate medical care, a complaint must allege that: (1) there was an objectively serious medical need; (2) the defendant committed a volitional act concerning the decedent's medical need; (3) that act was objectively unreasonable under the circumstances in terms of responding to the decedent's medical need; and (4) the defendant acts "purposefully, knowingly, or perhaps even recklessly" with respect to the risk of harm. *Miranda v. County of Lake*, 900 F.3d 335, 353–54 (7th Cir. 2018).[2]

With respect to Gonzalez's section 1983 personal capacity claim against Sheriff Nygren, we conclude that dismissal was appropriate. Such claims "seek to impose individual liability upon a government officer for actions taken under color of state law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). To establish personal liability, the plaintiff must show that the relevant official "caused the constitutional deprivation at issue" or "acquiesced in some demonstrable way in the alleged constitutional violation." *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) (internal quotation marks omitted). "Lawsuits against individuals require personal involvement in the

---

[2] The district court evaluated the claim under the Eighth Amendment's deliberate indifference standard before we decided *Miranda*. Gonzalez also argues that the district court inappropriately required him to support his complaint with "evidence" at the dismissal stage. These do not require remand on appeal because we can affirm on any basis supported by the record when the losing party has a fair opportunity to be heard on the issue, as Gonzalez did here. *See Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 19 F.4th 1002, 1006 (7th Cir. 2021).

constitutional deprivation to support a viable claim." *Id.* In other words, for a supervisor to be liable for the allegedly wrongful conduct of others, he must both (1) "know about the conduct" and (2) facilitate, approve, condone, or turn a blind eye toward it. *Kemp v. Fulton County*, 27 F.4th 491, 498 (7th Cir. 2022). Under the second prong, a supervisor is liable if he acted purposefully, knowingly, or recklessly, but *not* negligently. *Id.*

Several defects in Gonzalez's complaint justified dismissal. First, the complaint does not allege that Sheriff Nygren knew about the decedent's detention or medical condition or that Sheriff Nygren made any decisions specific (tacit or otherwise) to the decedent. It cannot simply be assumed that an administrator of a facility like the McHenry County jail, which has 650 beds, had knowledge of the circumstances of every individual in custody. Second, even if Sheriff Nygren had been apprised of the decedent's medical situation and personally ordered or acquiesced in his transfers to the hospital, those decisions would have been objectively reasonable and satisfied the constitutional requirements for detainees. Indeed, there are no assertions that jail personnel did not promptly respond to the decedent's medical needs or failed to heed advice given by medical professionals regarding his care. Per the complaint, whenever there was a medical incident, jail personnel transported the decedent to the hospital to receive care he could not get at the jail. Accordingly, there is no plausible allegation that Sheriff Nygren acted recklessly or otherwise culpably with respect to jail staff's handling of the decedent's medical condition. And, as we explain below, Sheriff Nygren had no legal alternative to accepting the decedent into the jail and keeping him in custody because he had no authority to release him. So the complaint contained no

cognizable assertion of personal liability on Sheriff Nygren's part.

We turn now to Gonzalez's claim of liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). The critical question under *Monell* is whether a policy or custom of a municipal entity caused a constitutional deprivation. 436 U.S. at 690. A municipal entity[3] can be liable under section 1983 for constitutional violations only if those violations were brought about by: (1) an express policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by an agent with final policymaking authority. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). And *Monell* liability only attaches if the policy, custom or practice, or decision was "the moving force behind the federal-rights violation." *First Midwest Bank v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021) (internal quotation marks omitted). In other words, the plaintiff "must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

Gonzalez targets what he calls the sheriffs' "policy" of accepting any pretrial detainee into the jail without regard to the jail's ability to accommodate his serious medical conditions. He argues that, in accepting the decedent into the jail despite his serious medical needs, the sheriffs deprived him of a constitutional right. Gonzalez contends that this

---

[3] An Illinois county sheriff is a proper party for a *Monell* liability claim because he has final policymaking authority over jail operations. *See Miranda*, 900 F.3d at 344. The county is not in charge of jail policy but is responsible under state law for paying any money judgments against a sheriff in his official capacity. *Carver v. Sheriff of LaSalle County*, 324 F.3d 947 (7th Cir. 2003).

purported policy caused the decedent's pain and ultimate death. He suggests that the sheriffs should have "persuade[d] the prosecutor to seek release on personal recognizance or arrange for release on home confinement" or come up with some other "creative" solution.

Gonzalez does not allege a policy at all. For section 1983 purposes, an official can be said to set a "policy" only when he possesses the authority to adopt a rule prescribing government conduct on a matter. *Killinger v. Johnson*, 389 F.3d 765, 771 (7th Cir. 2004). But "courts, not sheriffs, make pretrial detention decisions." *Williams v. Dart*, 967 F.3d 625, 635 (7th Cir. 2020). Gonzalez's theory that *Monell* liability can be imposed when jail officials simply comply with a court's confinement orders fails because jailors cannot release pretrial detainees remanded to their custody. *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004) ("Guards cannot turn away persons committed by the courts …."). State or local law determines whether someone is a policymaker under section 1983. *Killinger*, 389 F.3d at 771. Keeping in custody a detainee remanded to detention by a court is not a "policy" that can be adopted or discarded; it's an obligation that jailors cannot evade. Illinois law clearly compels a sheriff, in his capacity as a warden of a county jail, to "receive and confine in such jail, until discharged by due course of law, all persons committed to such jail by any competent authority." 730 ILCS 125/4.

Here, jail personnel did what they could do for the decedent consistent with the U.S. Constitution and the laws of Illinois, and that was to take him to the hospital for treatment when necessary. Gonzalez does not identify, nor could we find, authority for the proposition that the Constitution empowers, much less requires, a sheriff to release a detainee

committed to his charge. In essence, Gonzalez asks us to impose *Monell* liability on jail officials who had no policymaking authority over the "policy" he alleges. But the sheriffs "cannot be liable under *Monell* when there is no underlying constitutional violation." *Sallenger v. City of Springfield*, 630 F.3d 499, 504 (7th Cir. 2010). Without a valid allegation of a policy, Gonzalez's claims cannot be sustained.

To sidestep this requirement, Gonzalez cites several cases to support his contention that jailors should not accept custody of pretrial detainees if they are unable to provide constitutional conditions of confinement. But these cases do not support the appellant's proposition. *Scicluna v. Wells*, 345 F.3d 441 (6th Cir. 2003), and *Payne v. Lynaugh*, 843 F.2d 177 (5th Cir. 1988), dealt with prison officials providing constitutionally inadequate medical care. As mentioned, Gonzalez does not allege that the jail personnel here were inattentive to the decedent's medical needs. He also cites *Brown v. Plata*, 563 U.S. 493 (2011), for support. But that case is clearly inapposite factually and legally. There, prison officials allowed overcrowding to persist "for years" resulting in several inhumane conditions, including a single toilet for every 54 prisoners; mental healthcare wait times as long as 12 months; a suicide rate 80% higher than the average for the national prison population; and the death of an inmate every six to seven days. *Id.* at 499–506. Here, the decedent was promptly taken to the hospital whenever he suffered a medical problem and he died in IDOC custody—not in the jail. Moreover, *Plata* was about whether a federal court's remedial order, which essentially required state officials to release inmates from California's overcrowded prison system, was consistent with the statutory scheme set up by Congress. *Id.* at 500–01. That decision did

not suggest that a correctional facility had the constitutional duty to release prisoners on its own initiative.

Similarly, two other cases Gonzalez cites relating to overcrowding, *Duran v. Elrod*, 713 F.2d 292 (7th Cir. 1983), and *United States v. Cook County*, 761 F. Supp. 2d 794 (N.D. Ill. 2011), stand only for the proposition that *courts*—not jailors—can release pretrial detainees under certain conditions. In sum, Gonzalez does not plausibly allege a policy, custom or practice, or decision that can give rise to *Monell* liability.

There is no basis in law supporting the claims raised in Gonzalez's complaint. The decedent, through his attorney or other legal resources, could have petitioned the court for release based on extraordinary medical grounds. But it was not the duty of the sheriff to find a way to release him contrary to the court's remand orders. Therefore, having reviewed the briefs and the relevant law, we AFFIRM.