In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 24-2029

ADRIANNA KONDILIS, *et al.*,

*Plaintiffs-Appellants*,

*v.*

CITY OF CHICAGO,

*Defendant-Appellee*.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:23-cv-02249 — **Robert W. Gettleman**, *Judge*.

———————————

ARGUED MAY 15, 2025 — DECIDED DECEMBER 2, 2025

———————————

Before RIPPLE, KIRSCH, and KOLAR, *Circuit Judges*.

KOLAR, *Circuit Judge*. Plaintiffs are current or former employees of the City of Chicago who allege that the City's COVID-19 vaccination policy violated their constitutional and statutory rights. One might think this case is about the City's failure to grant a religious exemption to a vaccine mandate, a situation that can raise serious First Amendment concerns. It is not. All of the plaintiffs who submitted the requisite paperwork were granted a religious exemption and were not

required to take the vaccine. Plaintiffs' complaint, rather, is that they were required to input their vaccination status into a database and enter COVID-19 testing results, a claim with no legal merit. The district court dismissed Plaintiffs' Third Amended Complaint for failure to state a claim. We affirm.

## I.   Background

At the pleading stage, we take as true all facts in Plaintiffs' complaint. We do the same for any documents that are referenced in the complaint and central to the claim. *Dean v. Nat'l Prod. Workers Union Severance Tr. Plan*, 46 F.4th 535, 543 (7th Cir. 2022). We construe these facts in the light most favorable to Plaintiffs and draw all reasonable inferences in their favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A.  The City's COVID-19 Policy

In March 2020, the World Health Organization declared COVID-19, the disease caused by SARS-CoV-2, a pandemic.[1] In October 2021, the City of Chicago issued a COVID-19 vaccination policy (the Policy) to help protect its workforce and curb the spread of COVID-19 amongst its employees and the public. The Policy required "City employees, as a condition of employment … [to] either be fully vaccinated against COVID-19 or undergo COVID-19 testing[.]" But it allowed employees to request medical, religious, and other exemptions. The Policy also required employees to report their vaccination status

---

[1] Tedros Adhanom Ghebreyesus, World Health Org. Director General, *Opening Remarks at the Media Briefing on COVID-19* (Mar. 11, 2020), https://www.who.int/news-room/speeches/item/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020 [https://perma.cc/55PV-3KDN] ("We have therefore made the assessment that COVID-19 can be characterized as a pandemic.").

and, if not vaccinated, weekly COVID-19 test results, in an employee portal. Failure to follow these testing and reporting requirements would result in employees being placed in a non-disciplinary, no-pay status until they reported their results.

### B. Plaintiffs' Exemptions from the Policy

Plaintiffs are sixteen former or current Chicago police officers and an officer from the City's Office of Emergency Management. All worked for the City during the COVID-19 pandemic. Based upon their religious beliefs, Plaintiffs sought exemptions under the Policy from the vaccination requirement. With a few initial issues, they eventually made those exemption requests in compliance with the Policy, which set forth the exemption procedures. The plaintiffs' properly filed exemptions were granted.[2] No Plaintiff articulated any specific religious objection to merely reporting their vaccination and testing status in the employee portal set up in accordance with the Policy.

Nevertheless, Plaintiffs initially refused to report their vaccination status in the employee portal. Direct orders to comply from Plaintiffs' supervisors followed, and many of them still did not enter their information into the portal. Those who failed to abide by direct orders were placed on non-disciplinary, no-pay status pursuant to the Policy. Employees who

---

[2] Plaintiff Toney alleged that the City denied her religious exemption request because her exemption form did not contain a signature from a religious leader. We need not address whether Toney should be considered differently from the other plaintiffs, however, because she did not raise the denial of her accommodation request as a separate issue on appeal.

eventually complied returned to work for the City. The plaintiffs who refused to comply did not return.

This lawsuit followed. Three Plaintiffs (Adrianna Kondilis, Marcin Kazarnowicz, and Stephanie Toney) alleged that the City had discriminated against them based on their religion in violation of Title VII of the Civil Rights Act of 1964. And all Plaintiffs brought constitutional claims under 42 U.S.C. § 1983 alleging violations of the First Amendment right to free exercise of religion and the Fourteenth Amendment's guarantee of equal protection, as well as state-law claims under the Illinois Religious Freedom Restoration Act ("IRFRA"), 775 ILCS 35/1 *et seq.*[3] The City moved to dismiss, alleging Plaintiffs failed to state a claim upon which relief may be granted.

The district court granted the motion and entered final judgment against Plaintiffs. It held that Plaintiffs Kondilis and Kazarnowicz's Title VII claims failed because their theory was factually implausible and they did not allege a religious practice that conflicted with the City's testing and reporting requirements. *Kondilis v. City of Chicago*, 2024 WL 2370204, at *3–4 (N.D. Ill. May 23, 2024). And the court found that Plaintiff Toney's Title VII claim—though technically not ripe because she had not yet received her right to sue letter from the Equal Employment Opportunity Commission—failed on the merits for the same reasons. *Id*. at *4 n.1.

As to Plaintiffs' other claims, the district court concluded that Plaintiffs had only requested exemption from the

---

[3] Plaintiffs also brought claims for violation of substantive due process under the Fourteenth Amendment and state-law indemnification. Plaintiffs did not address these claims on appeal.

vaccination itself; since that exemption was granted, Plaintiffs could not succeed on claims based on their noncompliance with the mandatory-reporting aspects of the Policy. *Id*. at *3–4. Plaintiffs timely appealed.

## II.    Analysis

We review a district court's grant of a motion to dismiss *de novo*. *Word v. City of Chicago*, 946 F.3d 391, 393 (7th Cir. 2020). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ind. Land Tr. #3082 v. Hammond Redevelopment Comm'n*, 107 F.4th 693, 698 (7th Cir. 2024) (quoting *Gonzalez v. McHenry County*, 40 F.4th 824, 827 (7th Cir. 2022)). "A claim has facial plausibility when the allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation marks omitted).

All Plaintiffs contend that the district court erred in dismissing their First Amendment, equal protection, and IRFRA claims, and Plaintiffs Kondilis, Kazarnowicz, and Toney argue that the district court erred in dismissing their Title VII claims. We address each in turn.

### A.  Free Exercise of Religion

Plaintiffs contend that the City violated their First Amendment free-exercise rights by burdening their religious beliefs and subjecting them to adverse actions for violating the Policy. The First Amendment provides that "Congress shall make no law … prohibiting the free exercise" of religion. U.S. CONST. amend I. The Free Exercise Clause applies equally to the federal government and to the states. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).

We previously held the Policy is constitutional on its face. *Lukaszczyk v. Cook County*, 47 F.4th 587, 607 (7th Cir. 2022). In *Lukaszczyk*, we affirmed the denial of a preliminary injunction against the Policy after finding the plaintiffs' free-exercise and other constitutional claims unlikely to succeed on the merits. *Id.* Key to our analysis was the fact that the Policy allowed for religious exemptions, foreclosing a facial challenge "without evidence of how the religious exemption is applied in practice." *Id.*

But here, Plaintiffs allege that the Policy is unconstitutional as applied to them, so *Lukaszczyk* does not foreclose their claim. Although Plaintiffs refer to the Policy generally as unconstitutional, they only take specific issue with two sections of it. Namely, they argue that the Policy's requirements of entering their vaccination status and COVID-19 test results into the employee portal burden their free exercise of religion.

When a plaintiff seeks to challenge the constitutionality of a policy, law, or ordinance, we first consider the requisite level of scrutiny for evaluating the challenge. Plaintiffs urge us to apply strict scrutiny, while the City contends that rational-basis review is appropriate.

To determine which level of scrutiny we should apply to a free-exercise challenge, we typically ask whether the challenged policy burdens religion at all, and if so, whether the policy is "neutral and generally applicable." *Mahmoud v. Taylor*, 145 S. Ct. 2332, 2360 (2025).[4] A government policy is not

---

[4] The Supreme Court decided *Mahmoud* between oral argument and publication in this case. We have considered whether the "character of the burden" at issue in this case warrants a departure from the "neutral and generally applicable" test as in *Mahmoud*, 145 S. Ct. at 2361 (citing

neutral "if it is specifically directed at a religious practice." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 526 (2022) (cleaned up). And a policy is not generally applicable if it "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way" or provides "a mechanism for individualized exemptions." *Kennedy*, 597 U.S. at 526 (quoting *Fulton v. City of Philadelphia*, 593 U.S. 522, 533–34 (2021)). "Failing either the neutrality or general applicability test is sufficient to trigger strict scrutiny." *Id.*

As an initial matter, Plaintiffs do not elaborate on *how* mere reporting requirements burden their free exercise of religion—even incidentally. Their complaint summarily alleges that "enter[ing] their status into the Portal conflicts with Plaintiffs' religious beliefs," but does not explain the nature of this conflict for any specific Plaintiff. But even assuming the Policy's reporting requirements burden Plaintiffs' religious exercise, they have failed to show that these requirements were not neutral and generally applicable.

To start, Plaintiffs have never meaningfully contested religious neutrality, either in their complaint or on appeal. And for good reason. Section V of the Policy, which requires employees to report their vaccination status in the employee portal, states that "all employees … who are covered" by the Policy must report their vaccination status or be subject to

---

*Wisconsin v. Yoder*, 406 U.S. 205, 220–21 (1972)). We find the test appropriate here. The character of the burden alleged here is not like *Yoder* or *Mahmoud*, both of which involved compulsory school programs that infringed on parents' fundamental right to direct the education of their children.

discipline. This section plainly does not distinguish among religions, nor does it distinguish between religious and nonreligious employees. Section VII, which addresses the COVID-19 testing reporting requirements for the portal, similarly draws no distinction based on religion: it applies to all "[e]mployees … who are covered by this policy" and are "not fully vaccinated by October 15, 2021," without further distinction. And neither section reflects any religious animus at all. Both sections "are neutral: They do not target religion or religious institutions." *Ill. Bible Colleges Ass'n v. Anderson*, 870 F.3d 631, 639 (7th Cir.), *as amended* (Oct. 5, 2017).

That said, Plaintiffs contend that the sections were not generally applicable because the City applied the Policy inconsistently. They allege that not all employees had to comply with the portal reporting requirements, making them "selectively burdened" for being forced to do so. In support, they cite a chart in their complaint showing allegedly inconsistent application of the Policy among different Plaintiffs, as well as allegations that other employees who had not requested religious exemptions refused to report their status on the Portal but were not similarly disciplined.

But this argument fails. It is not enough for Plaintiffs—all of whom profess sincere religious beliefs—to show that the Policy was inconsistently applied across their own personal circumstances; they must plausibly show that this inconsistency bore upon religion in some way. *Listecki v. Off. Comm. of Unsecured Creditors*, 780 F.3d 731, 743 (7th Cir. 2015). Yet the complaint does not do so. And the chart does not identify any trend singling out a particular religion or set of religions for differential treatment within the plaintiff group. Indeed, the chart itself belies Plaintiffs' theory that the City treated them

differently based on their religious exemptions. It shows that some Plaintiffs had not even requested exemptions at the time they were disciplined for failing to input their information into the portal. Based on Plaintiffs' allegations and the Policy's language itself, we find Sections V and VII generally applicable.

Thus, we apply only rational-basis review to Plaintiffs' claims. A rational-basis analysis requires us to strike down a policy only if it bears no rational relationship to some legitimate government purpose. *Ill. Bible Colleges Ass'n*, 870 F.3d at 639. This is an exceedingly light burden for the City to carry, and a correspondingly heavy burden for Plaintiffs.

We need not spill much ink in holding that the City had a rational basis for its Policy's reporting requirements and disciplinary procedures during a global pandemic. It was perfectly rational for the City to track who was vaccinated and who had tested positive for COVID-19 in order to protect the safety of its employees and the public from COVID-19 itself. Doing so equipped the City to identify potential hotspots and prevent immunocompromised or other at-risk individuals from coming into close contact with those who had or were more likely to have the virus.

The disciplinary regime was also rational. Without an enforcement mechanism, the City's Policy would be nothing more than a suggestion. The City could rationally conclude that Plaintiffs' refusal to comply with the Policy's reporting requirements threatened workplace and public safety, and that discipline was thus necessary to stop the spread of COVID-19 and encourage other employees to comply with the Policy. Accordingly, the City's Policy satisfies rational-basis review, and Plaintiffs' free-exercise challenge fails.

### B. Equal Protection

Plaintiffs also urge us to hold that the Policy as applied to them violated the Equal Protection Clause by subjecting them to adverse actions for failing to comply with the portal reporting requirements.

The Fourteenth Amendment provides, in relevant part, that "[n]o State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. "This is essentially a direction that all persons similarly situated should be treated alike." *St. Joan Antida High Sch. Inc. v. Milwaukee Pub. Sch. Dist.*, 919 F.3d 1003, 1008 (7th Cir. 2019) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)) (internal quotation marks omitted).

Plaintiffs do not meaningfully contest on appeal that their equal-protection claims are subject to rational-basis review. As discussed above, the Policy satisfies rational-basis review if "it bears a rational relationship to a legitimate government interest." *Wis. Educ. Ass'n Council v. Walker*, 705 F.3d 640, 653 (7th Cir. 2013). To survive a motion to dismiss for failure to state an equal-protection claim, Plaintiffs "must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 639 (7th Cir. 2007) (quoting *Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992)).

Again, Plaintiffs argue that the Policy (as applied) treated unvaccinated and religiously accommodated employees differently from both vaccinated and un-vaccinated, unaccommodated employees. But as our analysis in the context of the First Amendment shows, the City's Policy survives rational-

basis review. The City rationally treated Plaintiffs differently from other employees in order to stop the spread of COVID-19 among its employees and the public.

Plaintiffs contend, however, that even if these distinctions were warranted in the early stages of the pandemic, they became unjustified as the pandemic "waned" in late 2021 and 2022. But this is precisely the type of legislative policy judgment that we must shy away from on rational-basis review. "[E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). We will not superimpose on the City our view of when the waning pandemic required a change in its Policy. Thus, we find that the City's Policy also satisfies constitutional scrutiny under the Equal Protection Clause.

### C. State and Federal Statutory Claims

We conclude with Plaintiffs' statutory arguments under IRFRA and Title VII.

Plaintiffs concede that our review of the district court's dismissal of their IRFRA claims rises and falls with their constitutional claims. Indeed, they devote only four sentences to these claims in their brief on appeal. And those four sentences merely restate the arguments made in support of their constitutional claims. Because (as we have held) those claims fail, so too do Plaintiffs' state-law claims.

Similarly, Plaintiffs Kondilis, Kazarnowicz, and Toney ask us in their statement of issues to reverse the dismissal of their Title VII claims, but they do not address how (if at all) this analysis differs from their other claims. We have repeatedly said that "[a]rguments that are underdeveloped, cursory, and

lack supporting authority are waived." *Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1063 (7th Cir. 2020); *Bradley v. Village of University Park*, 59 F.4th 887, 897 (7th Cir. 2023) (same). We thus find these Title VII claims waived and do not address them.

### III.    Conclusion

For the reasons discussed above, we AFFIRM.